J-A23012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                          :           PENNSYLVANIA
                                          :

              v.                             :
                                          :

THOMAS L. JOE-MURPHY              :
                                          :

                Appellant               :       No. 1241 EDA 2019

Appeal from the Judgment of Sentence Entered November 19, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0001291-2017.

BEFORE:    KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:           **FILED FEBRUARY 9, 2021**

Thomas L. Joe-Murphy appeals the judgment of sentence imposed following his conviction for endangering the welfare of children and corruption of minors.[1]  We affirm.

The trial court set forth the following summary of the factual history underlying this case.

> The complainant (hereafter referred to as O.W.) was sexually assaulted by [Joe-Murphy], her mother's boyfriend at the time, from ages eleven (11) to thirteen (13).  O.W. referred to [Joe-Murphy] as her stepfather and considered him to be a father[-]figure.  [Joe-Murphy] engaged in a course of conduct that started with grooming behaviors such as: coming into O.W.['s] bedroom at night and asking to lay with her; having O.W. come to the bathroom while he was naked; massaging O.W.'s back and feet; and touching her about her body, over her clothes.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 4304, 6301.

[Joe-Murphy's] sexual advances toward O.W. escalated to having her touch his penis and ultimately [perform] oral sex on him. [Joe-Murphy] would also touch O.W.'s buttocks and came up close behind her so she could feel his penis. This sexual activity occurred all hours, day and night, several times a week over the course of a "couple years." The next phase of [Joe-Murphy's] grooming activity occurred with him touching O.W.'s vagina, inside and out, with his hands. Vaginal intercourse occurred on Valentine's Day, when O.W. was age twelve (12) and according to O.W. "I wanted to do it and then it kind of happened, but it stopped because it hurt and I was bleeding after that." The bloody sheets which were on O.W.'s mother's bed were washed by [Joe-Murphy]. On another occasion, at the home of O.W.'s grandfather, O.W.'s grandmother walked in on [Joe-Murphy] "caressing" O.W. Other than the grandmother telling O.W. to go downstairs, nothing else occurred from that incident. O.W. was age twelve (12) to thirteen (13) the last time there was physical, sexual contact with [Joe-Murphy]. This incident took place in the kitchen of O.W.'s grandfather's house, when [Joe-Murphy] "stuck his penis inside [O.W.'s] vagina and [she] told him to stop."

Texting on the phone and various other apps provided another way to engage O.W. in sexually inappropriate behavior. According to O.W., [Joe-Murphy's] texts were "more about sexual things, he would send me pictures of his private parts," and in return she would "say sexual things back to him."

Although O.W. wanted to tell what was occurring with [Joe-Murphy], he guilted her out of doing so by saying "I feel bad and kill myself for this." As a result, [Joe-Murphy] wrote in a journal about the sexual activity. The journal entry about the Valentine's Day intercourse was discovered by O.W.'s grandmother, but was explained away by O.W. O.W. also delayed disclosure because at her young age she felt it was her fault because "I didn't say no all the time." O.W. also, did not want to tell her mother because [Joe-Murphy] "was her boyfriend and my little brother's dad, so I felt awkward talking to her." O.W.'s initial effort to disclose to her mother, counselors and Philadelphia Children's Alliance (hereinafter referred to as PCA) did not implicate [Joe-Murphy]. Eventually, in November 2016, O.W. fully disclosed naming [Joe-Murphy] as the perpetrator.

Trial Court Opinion, 9/5/19, at 3-4 (unnecessary capitalization, quotation marks, and citations to the record omitted).

Joe-Murphy was arrested and charged with rape of a child, involuntary deviant sexual intercourse with a child, aggravated indecent assault of a child, unlawful contact with a minor, statutory sexual assault, endangering the welfare of a minor, indecent assault of a person less than 13 years of age, and indecent exposure. Before trial, the court permitted the Commonwealth to amend the bill of information to add a charge of corruption of minors. The matter proceeded to a jury trial in September 2018, at the conclusion of which the jury found him guilty of endangering the welfare of a child and corruption of minors.[2] On November 19, 2018, the trial court sentenced Joe-Murphy to an aggregate prison term of three to six years, followed by four years of probation. Joe-Murphy filed a timely notice of appeal. Both Joe-Murphy and the trial court complied with Pa.R.A.P. 1925.

Joe-Murphy raises the following issues for our review:

1. Did the trial court err in permitting improper opinion testimony by the Commonwealth's expert witness?

2. Did the trial court err by precluding defense counsel from impeaching O.W. with contradictory evidence?

3. Did the trial court err by not granting a new trial where the weight of the evidence should have resulted in an acquittal?

---

[2] The jury was unable to reach a unanimous verdict on the remaining charges. As such, the Commonwealth decided to *nolle prosse* those charges rather than to retry Joe-Murphy.

4. Did the trial court abuse its discretion in imposing a sentence that was manifestly excessive and unreasonable?

Joe-Murphy's Brief at 5.

In his first issue, Joe-Murphy challenges the trial court's admission of expert opinion testimony. Our standard of review is as follows:

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Benvenisti-Zarom*, 229 A.3d 14, 25 (Pa. Super. 2020) (citation omitted). Further,

> Expert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted in the relevant field.

*Commonwealth v. Maconeghy*, 6171 A.3d 707, 712 (Pa. 2017) (citing Pa.R.E. 702).

In cases of sexual assault,

> a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

42 Pa.C.S.A. § 5920(b)(1). Further, an expert witness "may testify to facts and opinions regarding specific types of victim responses and victim

behaviors." *Id*. § 5920(b)(2).  However, a properly qualified expert providing testimony pursuant to section 5920 may not offer opinions regarding the credibility of any witness, including the victim.  *See Commonwealth v. Jones*, No. 24 WAP 2019, 2020 Pa. LEXIS 5622, at *34 (Oct. 30, 2020); 42 Pa.C.S.A. § 5920(b)(3).

In this case, the Commonwealth presented the testimony of Maria McColgan, M.D., a board-certified, child abuse pediatrician, as an expert in the fields of sexual abuse and pediatrics.  On cross-examination, defense counsel questioned Dr. McColgan in detail regarding certain behaviors exhibited by O.W. before she disclosed her sexual abuse by Joe-Murphy, including O.W.'s consensual sexual activity with her boyfriend, reports from her mother that O.W. had repeatedly run away from school, and reports that O.W. had been taken to a residential crisis center for what her mother at that time believed were false reports of abuse at home.  On redirect examination, the prosecutor elicited testimony from Dr. McColgan that these behaviors were consistent with child sexual abuse.

Joe-Murphy argues that the trial court erred in permitting Dr. McColgan to testify on redirect because her opinions regarding O.W.'s behaviors were beyond the scope of Dr. McColgan's expertise.  Specifically, Joe-Murphy challenges the following testimony:

> Q.  Counsel went through with you the history of [O.W.'s] behavior given to you by her [mother].  Does the history of her behavior have any effect on your diagnosis or physical findings of [O.W.]?

A. In some ways, yes.

Q. Can you explain how those ways are?

A. Children who have been sexual abused have acting out behaviors particularly before they disclose and keeping in the secret of what's bothering them.

[Defense Counsel]: Objection. Beyond the qualifications.

THE COURT: Overruled. You may answer.

THE WITNESS: Children who are sexually abused are more likely to have sexual promiscuous activities, are more likely to have mental health issues, such as depression, anxiety, suicidal ideations. Of course, those behaviors are not specific to sexual abuse, but they are more common in children with sexual abuse. So the report of those behaviors were not at all surprising to me that the child who has been having those behaviors eventually makes a disclosure of previous abuse.

N.T. Trial, 9/7/18, at 33-34.

Joe-Murphy contends that this opinion testimony was not within Dr. McColgan's scientific, technical, or other specialized knowledge. He argues that, as a pediatrician, Dr. McColgan was not qualified to offer an expert opinion related to behavioral and mental health issues. Joe-Murphy asserts that the Commonwealth offered no evidence of Dr. McColgan's education or experience related to these specific areas, which usually fall under the expertise of a psychiatrist or therapist.[3]

_____

[3] Joe-Murphy further argues that Dr. McColgan improperly "opined on O.W.'s credibility when she testified that [O.W's] behavioral problems were not abnormal for someone who had been sexually abused." Joe-Murphy's Brief at 15. However, this issue was not preserved for our review. At trial, defense

The trial court considered Joe-Murphy's first issue and determined that it lacked merit. It reasoned:

> [Defense] counsel stipulated to the doctor's expertise, which qualified her as an expert in the field of child sexual abuse and pediatrics. This "expert" designation was in recognition of the doctor as founder and director of the Child Protection Program at St. Christopher's Hospital; that she was one of the first board-certified child abuse pediatricians; that she has performed several thousand comprehensive evaluations that examine the child's history and physical well-being; that she evaluated thousands of sexual abuse cases; published child sexual abuse review articles and testified hundreds of times in the area of child sexual abuse.
>
> The objectionable testimony was in fair response on redirect examination to the extensive cross-examination about the doctor's knowledge of O.W.'s acting out behavior prior to disclosure, such as truancy and running away from home. [Defense] counsel's examination opened the door for Dr. McColgan to offer her expert opinion that "children who have been sexually abused have acting out behaviors particularly before they disclose and keeping in the secret of what's bothering them."

Trial Court Opinion, 9/5/19, at 7 (citations to the record omitted).

We discern no abuse of discretion by the trial court in determining that Dr. McColgan was qualified to offer an expert opinion related to behavioral and mental health issues suffered by victims of child sexual abuse. Dr. McColgan, a board-certified child abuse pediatrician, clearly had both

---

counsel objected to Dr. McColgan's testimony solely on the basis that her testimony exceeded her professional qualifications. *See* N.T. Trial, 9/7/18, at 33-34. No objection was raised on the basis that Dr. McColgan's testimony constituted an impermissible opinion regarding O.W.'s credibility. Thus, that particular challenge is waived. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

specialized training and education in victim services issues related to sexual violence to children that would assist the trier of fact in understanding the dynamics of sexual violence to children, child victim responses to sexual violence and the impact of sexual violence on child victims during and after being assaulted. *See* 42 Pa.C.S.A. § 5920(b)(1). Moreover, Joe-Murphy stipulated at trial that Dr. McColgan was an expert in the fields of sexual abuse and pediatrics. Accordingly, she was permitted to testify to facts and opinions regarding specific types of child victim responses and child victim behaviors. *Id*. § 5920(b)(2). For these reasons, Joe-Murphy's first issue merits no relief.

In his second issue, Joe-Murphy contends that the trial court abused its discretion by precluding defense counsel from impeaching O.W. during her cross-examination at trial. As stated above, the admissibility of evidence is within the sound discretion of the trial court and will only be reversed upon a showing of an abuse of discretion. *See Benvenisti-Zarom*, 229 A.3d at 25. Similarly, the scope and limits of cross-examination are within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion or an error of law. *See Commonwealth v. Washington*, 63 A.3d 797, 805 (Pa. Super. 2013) (citing *In re Lokuta*, 11 A.3d 427, 444 (Pa. 2011); Pa.R.E. 611(a)(3) (providing that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: ... protect witnesses from harassment or undue embarrassment").

Generally, the credibility of a witness may be impeached by any evidence relevant to that issue. *See* Pa.R.E. 607. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

Joe-Murphy maintains that, during cross-examination, O.W. testified that her mother took her to a residential crisis center after she repeatedly ran away from home, but claimed that she was released the same day because she was not diagnosed with any condition. Joe-Murphy argues that the trial court should have granted defense counsel's request to impeach O.W. with evidence that, contrary to her testimony, she was diagnosed with oppositional defiance disorder. Joe-Murphy asserts that O.W.'s mother told Dr. McColgan that O.W. was diagnosed with oppositional defiance disorder.[4] Joe-Murphy

_____

[4] Joe-Murphy also argues that O.W.'s mother told Dr. McColgan that O.W. was, in fact, involuntarily committed to the crisis center. To the extent that Joe-Murphy contends that he should have been permitted to impeach O.W. on this additional matter, he failed to preserve the issue for our review. Defense counsel only sought to impeach O.W. regarding her diagnosis, not her commitment. *See* N.T. Trial, 9/7/18, at 83-84. Further, Joe-Murphy failed to raise this issue in his concise statement. *See Commonwealth v. Lord*, 719

contends that this impeachment evidence was vital because there were no witnesses or physical evidence to support the sexual abuse allegations, and the entire prosecution was premised on O.W.'s testimony. Joe-Murphy argues that the impeachment evidence was relevant to O.W.'s credibility and its probative value outweighed any danger of unfair prejudice. He contends that defense counsel should have been permitted to impeach O.W. with this evidence to support the defense theory that O.W. fabricated sexual abuse to evade punishment for running away and lying.

Joe-Murphy additionally argues that the impeachment evidence was necessary to show O.W.'s motive for lying about the sexual abuse. He points out that O.W. believed that she would have to remain at a residential crisis center if she were diagnosed with a mental health condition. According to Joe-Murphy, O.W. feared such placement because she would be separated from her boyfriend. Joe-Murphy asserts that "[t]he impeachment evidence was relevant to show O.W.'s motive in alleging sexual abuse when facing her greatest fear - separation from her boyfriend." Joe-Murphy's Brief at 19.

Finally, Joe-Murphy claims that it would be unlikely that the jury would not believe O.W. solely because she had a mental health diagnosis. He further

A.2d 306, 309 (Pa. 1998) (holding that if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived); *see also* Pa.R.A.P. 1925(b)(3)(vii) (providing that "issues not included in the [Concise] Statement … are waived"); Pa.R.A.P. 302(a). Thus, the issue is waived.

claims that "the trial court could have protected against the danger of unfair prejudice by limiting defense counsel's evidence, and argument, to the permissible reasons, and by giving the jury a cautionary instruction." *Id*.[5]

The trial court considered Joe-Murphy's second issue and determined that it lacked merit. The court reasoned as follows:

> [Joe-Murphy] argues that he should have been able to attack O.W.'s credibility as it contradicted prior testimony from Dr. McColgan that O.W.'s mother . . . told her O.W. had been diagnosed with oppositional defiance disorder. The court appropriately determined that the probative value of that line of questioning outweighed its prejudicial impact, particularly where as here, [Joe-Murphy's] counsel engaged in extensive cross-examination in numerous areas attacking O.W.'s credibility. Questioning O.W. about her mental health, albeit th[r]ough the presence or absence of a diagnosis of oppositional defiance disorder[,] was not necessary to attack her credibility. [Joe-Murphy's] counsel was relentless in his questioning about O.W.'s behavioral issues and served the same purpose for which he sought this particular line of questioning.

Trial Court Opinion, 9/5/19, at 7-8 (citations to the record and unnecessary capitalization omitted).

_____

[5] Joe-Murphy additionally argues that the trial court's ruling constitutes a violation of the confrontation clauses of the United States and Pennsylvania Constitutions. However, this particular challenge was not preserved for our review. At trial, defense counsel objected to the trial court's ruling solely on the basis that the impeachment evidence was relevant to O.W's credibility. N.T. Trial, 9/7/18, at 83-84. Defense counsel made no reference to the confrontation clause. *See id*. Accordingly, this particular issue is waived. *See Commonwealth v. Stays*, 70 A.3d 1256, 1264 (Pa. Super. 2013) (finding waiver of confrontation clause challenge where the defendant objected to hearsay only); *see also* Pa.R.A.P. 302(a).

- 11 -

We discern no abuse of discretion by the trial court in making its evidentiary ruling. Throughout his cross-examination, defense counsel confronted O.W. with her prior inconsistent statements regarding the sexual abuse, including her initial report of sexual abuse in 2015 where she denied that her abuser was Joe-Murphy, and her subsequent report in 2016 that Joe-Murphy was her abuser. The character of this extensive impeachment was such that the trial court could reasonably exercise its discretion to protect O.W. from harassment or undue embarrassment on the singular issue of whether she was diagnosed with oppositional defiant disorder. *See* Pa.R.E. 611(a)(3). Accordingly, Joe-Murphy's second issue merits no relief.

In his third issue, Joe-Murphy challenges the weight of the evidence supporting his convictions. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater

weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original).

Joe-Murphy contends that the verdict was contrary to the weight of the evidence because there were no witnesses to the sexual abuse, which occurred over a period of four years, and there was no physical evidence of abuse. Joe-Murphy points out that, although O.W. claimed that they had

exchanged sexually explicit text messages for years, no such messages were recovered by police. Joe-Murphy additionally asserts that the medical finding that O.W.'s hymen had been transected could have been the result of her consensual intercourse with two other individuals.

Joe-Murphy additionally contends that O.W.'s testimony was inconsistent and incredible. He points out that, in her 2015 and 2016 interview videos and at the preliminary hearing, O.W. only identified two locations at which they had oral sex; whereas she identified three additional locations at trial. He further points out that, in her 2016 interview video and at the preliminary hearing, O.W. stated that they had sexual intercourse on one occasion; whereas, at trial, she testified that they had sexual intercourse on four occasions.

Next, Joe-Murphy asserts that O.W. had a clear motive to fabricate allegations of sexual abuse in order to evade punishment for running away from home. Finally, Joe-Murphy contends that he presented four character witnesses who testified that he was a law-abiding and peaceful person.

Here, the trial court determined that the elements for each conviction were supported by the record, and concluded that "there is nothing about the jury's verdict that would 'shock one's sense of justice.'" Trial Court Opinion, 9/5/19, at 11. We discern no abuse of discretion by the trial court in arriving at its determination that the verdict of guilt did not shock the conscious. Although there were inconsistencies in O.W.'s testimony, the jury was free to

believe all, none, or some of her testimony. In the present case, the jury chose to believe at least some of O.W.'s testimony, despite discrepancies in the versions she presented. This Court may not re-weigh the evidence or second-guess the jury's credibility determinations.

Additionally, the trial court's discretion was not abused in rejecting Joe-Murphy's weight challenge despite the fact that the jury was hung on the most serious charges against him. That a jury is unable to agree on the defendant's guilt or innocence on certain charges does not operate as an acquittal on those counts. **See Commonwealth v. Jones**, 166 A.3d 349, 353 (Pa. Super. 2017). Had the Commonwealth opted to retry Joe-Murphy on those counts, a finding of conviction or acquittal on those charges was equally possible. Moreover, even if the jury had *acquitted* Joe-Murphy on the remaining charges, Pennsylvania courts have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. **Commonwealth v. Moore**, 103 A.3d 1240, 1246 (Pa. 2014). As we discern no abuse of discretion by the trial court in arriving at its determination that the verdict of guilt did not shock the conscious, no relief is due.

In his final issue, Joe-Murphy challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Moury**, 992 A.2d

162, 170 (Pa. Super. 2010). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[A.] § 9781(b).

*Id*. (citation omitted).

In the instant case, Joe-Murphy filed a timely notice of appeal, preserved his claims in a timely post-sentence motion, and included in his appellate brief a separate Rule 2119(f) statement. As such, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to review the Rule 2119(f) statement to determine whether Joe-Murphy has presented a substantial question for our review.

In his Rule 2119(f) statement, Joe-Murphy argues that the trial court abused its sentencing discretion by relying on (1) conduct for which Joe-Murphy was not convicted, including anally, vaginally, orally, and digitally

raping O.W.; and (2) concern for other rape victims who may be too scared to speak out.

An allegation that the court considered an impermissible sentencing factor raises a substantial question. *See Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009); *see also Commonwealth v. Matroni*, 923 A.2d 444 (Pa. Super. 2007). Because Joe-Murphy asserts that the trial court considered impermissible factors in imposing sentence, we find he raises a substantial question and will address the merits of his discretionary sentencing claim.

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Conte*, 198 A.3d 1169, 1176 (Pa. Super. 2018) (citation omitted).

Joe-Murphy contends that the trial court improperly relied on the Commonwealth's argument that Joe-Murphy anally, vaginally, orally, and digitally raped O.W., as he was only convicted of corruption of minors and endangering the welfare of children. According to Joe-Murphy, corruption of minors and endangering the welfare of children can encompass a multitude of

conduct, including exchanging sexually explicit text messages.[6]  He claims that there is no way to determine the exact conduct on which the jury found him guilty of these crimes.  Joe Murphy additionally contends that the trial court improperly relied on the Commonwealth's argument to consider other rape victims who may be out there and are too scared to speak out.  Joe-Murphy maintains that other victims have no bearing on the sentencing considerations for Joe-Murphy.  Joe-Murphy asserts that the trial court must have considered these impermissible factors because it overruled defense counsel's objections to them at the sentencing hearing.

As noted above, in order to establish an abuse of discretion, Joe-Murphy "must establish, **by reference to the record**, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Conte**, 198 A.3d at 1176 (emphasis added).

Here, Joe-Murphy offers no support for his assertion that the trial court arrived at its sentencing decisions based on the allegations that he anally, vaginally, orally, and digitally raped O.W. and/or a concern for other rape victims.  While the Commonwealth pointed out that O.W. testified at trial that Joe-Murphy anally, vaginally, orally, and digitally raped her, and O.W.'s

---

[6] Notably, at sentencing, defense counsel agreed with the trial court that corruption of minors and endangering the welfare of children could include vaginal, digital, and anal rape.  N.T. Sentencing, 11/19/18, at 17.

impact statement expressed a concern for other rape victims, there is no evidence in the record that the sentencing court based its sentencing decisions on these factors.

In imposing sentence, the trial court acknowledged the testimony of Joe-Murphy's character witnesses regarding the positive impact Joe-Murphy had made in the lives of other young people as a coach and mentor. N.T. Sentencing, 11/19/18, at 45. However, the trial court also acknowledged the pain expressed by O.W., to whom Joe-Murphy was supposed to be a role-model, mentor, and family member through his relationship with O.W.'s mother, and Joe-Murphy's betrayal of these individuals. *Id*. at 45-46. The trial court made no reference to the specific conduct supporting the sentence. Nor did the trial court indicate that its sentencing determination was based on a concern for other rape victims.

Moreover, the trial court considered Joe-Murphy's discretionary sentencing claim and determined that it lacked merit. The trial court detailed the factors that it considered when imposing sentence upon Joe-Murphy:

> The [trial c]ourt imposed a guideline sentence as to both charges to which [Joe-Murphy] was found guilty. Careful consideration was given to the sentencing guidelines along with: presentence reports; the complainant O.W.'s victim impact statement; the victim impact testimony of O.W.'s mother; the testimony of [Joe-Murphy's] character witnesses; [Joe-Murphy's] allocution; and arguments of counsel. Before imposing sentence the [trial c]ourt acknowledged [Joe-Murphy's] good qualities, and balanced them against the devastating impact of [Joe-Murphy's] sexually inappropriate behaviors upon the child, O.W. [Joe-Murphy's] sentencing issues are misleading, inaccurate and not supported by evidence or fact.

Trial Court Opinion, 9/5/19, at 10 (citations to the record omitted).

Based upon the record before us, we cannot conclude that that the trial court considered impermissible factors when imposing its sentence. Accordingly, Joe-Murphy's final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/09/2021