J-S11028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID JOHN CROYLE | : | |
| | : | |
| Appellant | : | No. 1043 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 30, 2020,
in the Court of Common Pleas of Armstrong County,
Criminal Division at No(s): CP-03-CR-0000708-2018.

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED:  July 30, 2021**

David John Croyle appeals from the judgment of sentence imposed following his conviction for statutory sexual assault, involuntary deviate sexual intercourse ("IDSI"), unlawful contact with minors, and corruption of minors.[1] We affirm.

The trial court summarized the relevant factual background of the case as follows:

> In the late summer of 2016, the victim in this case, C.S., began working as a newspaper route carrier for the Kittanning Paper, which Croyle then owned.  C.S. had asked Croyle for a "simple job" at the newspaper, and Croyle agreed that he could deliver newspapers to local businesses in Kittanning.  Croyle paid C.S. $5.00 a week in cash for the work.  Before hiring C.S., who

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S.A. §§ 3122.1(b), 3123(a)(7), 6318(a)(1), 6301(a)(1)(ii).

was then 13 years old, Croyle required that [C.S.'s] parents come to the newspaper office and sign a permission form, which they did.

Shortly after beginning his newspaper route, C.S. began communicating with Croyle online and by mobile phone. C.S. had previously set up an account on the mobile application known as "Grindr." Grindr is an application that facilitates communication chiefly between gay and bisexual men for purposes of chatting, sending and receiving photographs, and arranging for meetings, usually for sexual activity. Grindr requires that its users be at least 18 years old to create an account. C.S. lied about his age when setting up his Grindr account and indicated that he was 19[-]years[-]old. C.S. began using Grindr because he was exploring his sexuality and was looking for an older "mentor." He also was looking for older men to give him gifts and money to buy things he wanted.

Sometime after beginning his paper route at the Kittanning Paper, C.S. was perusing other accounts on Grindr and saw an account of a person close by. He messaged the user and sent several photographs of himself, including pictures of his face, lower body, and penis. As soon as he sent the pictures, the user receiving them logged off of the application. The next day, Croyle pulled C.S. aside and told him that he had sent the pictures to Croyle, who had a Grindr account. Croyle told C.S. not to worry about it, but not to tell anyone. Although they did not communicate further on Grindr, C.S. and Croyle began to communicate every day on via text message and Facebook messenger. The messages varied in subject and content, and sometimes included photographs and video chats.

One evening after finishing his paper route, C.S. received a message from Croyle on Facebook Messenger asking him if he wanted to come to Croyle's residence, which was an apartment located near the newspaper office. C.S. agreed and went to Croyle's apartment to "hang out." When he arrived, Croyle escorted him upstairs to the main apartment area. After looking round the apartment for a few minutes, Croyle led C.S. into the master bedroom. The two then discussed engaging in some type of sexual activity, which C.S. was expecting might happen. Croyle then told C.S. to get undressed. C.S. removed his pants, shirt, and underwear. Croyle then pulled out a bag of adult sex toys from his nightstand and placed a vibrating "cock ring" onto C.S.'s

penis. Croyle then performed oral sex on C.S.'s penis, during which he also inserted a lubricated dildo into C.S.'s anus. A few minutes into the encounter, C.S. started to feel uncomfortable and told Croyle that he had to go home. Croyle agreed and C.S. left the residence.

Approximately one week later, C.S. and Croyle again communicated on Facebook Messenger and agreed to meet at Croyle's residence. This time, when C.S. arrived, the two went directly into Croyle's bedroom. C.S. again expected that they would engage in sexual activity, which he agreed to. C.S. removed his clothes, and Croyle again performed oral sex on him and inserted a dildo into C.S.'s anus. C.S. eventually asked him to take it out because it felt uncomfortable. Croyle did so and asked if he could insert his penis into C.S.'s anus. C.S. agreed and told Croyle to "take it slow." C.S. turned over onto all fours and Croyle then inserted his lubricated penis into C.S.'s anus. C.S. heard Croyle take a photograph of the penetration, and then told Croyle that he did not like how it felt. Croyle stopped the encounter and C.S. left the residence. Later that evening, C.S. logged into Grindr and received from Croyle's Grindr account a copy of the photograph taken during the sex. The two did not have any further sexual encounters after this second incident, but they continued to communicate.

In or about July 2018, C.S. was interviewed by the Pennsylvania State Police ("PSP") in association with their investigation of C.S.'s sexual involvement with other individuals in the area. At the end of the interview, Trooper Anthony Vaccaro asked C.S. if there were any other "high end" public officials in Armstrong County with whom he had been involved. C.S. volunteered Croyle's name, but said that nothing happened between them and that Croyle is a nice person. Trooper Vaccaro had not known of Croyle up to that point. Later that day, PSP Troopers interviewed C.S. again. C.S. again mentioned Croyle's name, but denied that anything had happened between them.

On August 9, 2018, C.S. came to the Kittanning Borough Police station to be interviewed by a representative from the Pennsylvania Attorney General's office about messages and photographs found on C.S.'s mobile phone. During the interview, the investigator showed C.S. the photograph admitted at trial as Exhibit 17, which depicts anal penetration by a penis. After initially keeping silent, C.S. eventually identified Croyle as the

individual performing anal sex and himself as the recipient. C.S. then described to the investigators the two encounters he had with Croyle, which included descriptions of Croyle's residence, his bedroom, and the location and appearance of the adult sex toys Croyle used. The PSP filed the criminal complaint against Croyle the next day. During the subsequent forensic investigation of Croyle's electronic devices, the PSP found on Croyle's computer a folder designated with C.S.'s name and containing several photographs of C.S. that matched those that C.S. sent to Croyle's Grindr account.

In a subsequent interview on February 12, 2019, Trooper Vaccaro again asked C.S. about his encounters with Croyle and the Exhibit 17 photograph. C.S., acting nervously, told Trooper Vaccaro that the photograph did not depict Croyle, but rather C.S. and another individual. Then, on the afternoon of January 7, 2020, the day before trial testimony was to begin, C.S. told the attorney for the Commonwealth that the photograph in Exhibit 17 did in fact depict Croyle and him engaged in anal intercourse. The following morning, the attorney for the Commonwealth advised defense counsel on the record that C.S. changed his story about the identification of the two individuals depicted in Exhibit 17.

Trial Court Opinion, 11/5/20, at 4-8 (footnotes omitted).

The matter proceeded to a jury trial. At the close of the prosecution's case, Croyle's counsel orally moved for a judgment of acquittal, which the trial court denied. At the conclusion of trial, the jury convicted Croyle of statutory sexual assault, IDSI, unlawful contact with minors, and corruption of minors. On June 30, 2020, the trial court imposed an aggregate prison sentence of five to ten years, followed by three years of probation. Croyle filed post-sentence motions in which he again moved for a judgment of acquittal. Croyle also challenged, *inter alia*, the admission of Exhibit 17, the weight of the evidence, and his judgment of sentence. The trial court denied each of

Croyle's post-sentence motions. Croyle filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Croyle raises the following issues for our review:

1. Was it error to deny [Croyle's] motions, both on the record at trial, and during post-sentence motions, for judgment of acquittal, based upon the principle set forth in ***Com[monwealth]. v. Bennett***, 303 A.2d 220 . . . (Pa. Super. . . . 1973)?

2. Was it error to overrule trial counsel's objection to the admission of Exhibit 17 in light of [C.S.'s] prior contradictory identifications regarding the photograph?

3. Was it error to deny [Croyle's] supplemental post-sentence motion for new trial based on trial by ambush – the late disclosure of [C.S.'s] identification of [Croyle] in Exhibit 17 – in light of the evidence that trial counsel could have made available to the jury if he had adequate time to prepare to refute the identification?

4. Was it error to deny [Croyle's] supplemental post-sentence motion for new trial based on trial by ambush without the Commonwealth first having supplemented the record with the original digital file and metadata pertaining to Exhibit 17?

5. Was it error to overrule trial counsel's objections to Trooper Vaccaro's testimony about his prior experience concerning the behavior of children?

6. Was it error to deny [Croyle's] post-sentence motion for new trial based on a result against the weight of the evidence?

7. Was it error to deny [Croyle's] post-sentence motion for modification of sentence based on divergent sentences between himself and his erstwhile co-defendant Mark Feeney?

8. Did the lower court err cumulatively to the prejudice of [Croyle]?

Croyle's Brief at 3-5 (issues reordered for ease of disposition).

In his first issue, Croyle challenges the trial court's denial of his oral and written motions for judgment of acquittal. Our standard of review is as follows: "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Commonwealth v. Foster**, 33 A.3d 632, 634-35 (Pa. Super. 2011).

Importantly, if an appellant wishes to preserve a claim that the evidence was insufficient to support the verdict, then the Pa.R.A.P. 1925(b) concise statement must specify the element or elements upon which the appellant claims that the evidence was insufficient. **See Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008). Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains more than one element that the Commonwealth must prove beyond a reasonable doubt. **See Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009). When a concise statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal. **Williams**, 959 A.2d at 1257.

In the instant matter, Croyle was convicted of four different crimes, each consisting of multiple elements. However, as the trial court pointed out, Croyle failed to indicate in his concise statement which element(s) of which offenses he claims were unproven at trial. **See** Trial Court Opinion, 11/5/20, at 10. Due to this deficiency, Croyle failed to preserve for our review his

challenge to the denial of his motions for judgment of acquittal. Accordingly, his first issue warrants no relief.

In his next three issues, Croyle challenges the admission of Exhibit 17, which is the photo of someone performing anal sex on C.S. Our standard of review regarding admissibility issues is as follows:

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Benvenisti-Zarom*, 229 A.3d 14, 25 (Pa. Super. 2020) (citation omitted).

Further, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

In his second issue, Croyle contends that the trial court abused its discretion in admitting Exhibit 17 due to C.S.'s inconsistent statements to police regarding the individuals depicted in the photograph. As with other types of evidence, the admission of photographs in a criminal case is committed to the sound discretion of the trial court and will not afford grounds

for reversal absent a flagrant abuse of discretion. *See Commonwealth v. Reese*, 352 A.2d 143 (Pa. Super. 1975). In order for a photograph to be admitted into evidence, it must be properly authenticated by the testimony of a witness, with sufficient knowledge that the photograph is a fair and accurate depiction of the relevant scene. *See Commonwealth v. Sinwell*, 457 A.2d 957, 959 (Pa. Super. 1983).

Croyle points out that C.S. initially stated that the photograph depicted C.S. and Croyle engaging in anal intercourse, but later told law enforcement that it did not depict Croyle. Croyle further points out that, on the eve of trial, C.S. recanted his identification of Croyle, and claimed that the other individual in the photograph was someone other than Croyle. Croyle maintains that Exhibit 17 was the key exhibit in the trial and its admission rested upon an unreliable foundation due to C.S.' inconsistent accounts. Croyle argues that the admission of Exhibit 17 "on such flimsy factual support" caused extreme prejudice to him which could not be cured by a limiting instruction. Croyle's Brief at 39.

The trial court considered Croyle's second issue and determined that it lacked merit. The court reasoned:

> C.S. identified this photograph, together with the circumstances in which it was taken, in his testimony. He indicated that Croyle took the photo during their second sexual encounter. He further testified that, later that same evening, someone sent him the picture from Croyle's Grindr account. . . . C.S. at trial offered sufficient testimony identifying the photograph, identifying how he came to possess it, and identifying the participants depicted in it. That is sufficient foundational

- 8 -

testimony, and the photograph was therefore admissible. Defense counsel cross-examined C.S. exhaustively about his prior inconsistent statements to law enforcement and the district attorney's office and his reasons for changing his story. Those are not issues of admissibility but of weight for the factfinder.

Trial Court Opinion, 11/5/20, at 17.

We discern no abuse of discretion by the trial court in determining that C.S.'s testimony provided a sufficient factual foundation to permit the admission of Exhibit 17. C.S. clearly had sufficient knowledge of the scene depicted in Exhibit 17, was present when the photograph was taken, received the photograph from Croyle's Grindr account, and authenticated the photograph by explaining that it was a fair and accurate depiction of Croyle performing anal intercourse on C.S. *See Sinwell*, 457 A.2d at 959. Accordingly, Croyle's second issue merits no relief.

In his third issue, Croyle contends that the trial court abused its discretion in admitting Exhibit 17 because the late disclosure by the Commonwealth that it intended to use the exhibit constituted trial by ambush. Pennsylvania Rule of Criminal Procedure 573 governs pretrial discovery and is designed to prevent trial by ambush by permitting parties to a criminal case to be prepared for trial. *See Commonwealth v. Lynch*, 242 A.3d 339, 350 (Pa. Super. 2020); *see also Commonwealth v. Appel*, 689 A.2d 891, 907 (Pa. 1997) (holding that trial by ambush is contrary to the spirit and letter of the discovery rules and will not be condoned). Rule 573(B)(1)(d) requires the Commonwealth to disclose, if requested and material to the case, "the

circumstances and results of any identification of the defendant by voice, photograph, or in-person identification[.]"

Croyle concedes that he has been aware of Exhibit 17 since the inception of the case, as well as C.S.'s initial statement to law enforcement in which he indicated that the photograph depicted Croyle performing anal intercourse on C.S. However, Croyle complains that, because C.S. recanted his identification of Croyle in the photograph fourteen months before trial, Croyle was unfairly prejudiced when he was informed on the first day of trial, that C.S. had again identified Croyle as the individual performing anal intercourse on C.S. in Exhibit 17.

Croyle asserts that the Commonwealth knowingly permitted defense counsel to engage in the final day of trial preparation based on an inaccurate perception of the Commonwealth's case. Croyle additionally asserts that, by admitting the photograph, the trial court effectively deprived him of any opportunity to undermine the reliability of the photograph by having it, and the metadata associated with it, examined by a forensic analyst.

Croyle further claims that he was deprived of the opportunity to disprove that he was the individual performing anal intercourse in Exhibit 17. Croyle claims that the photograph depicts the lower abdomen of the person performing anal intercourse with no body hair on the stomach and recently shaved pubic hair. Croyle maintains that on his cell phone extraction report, there are various nude images of himself that have dates listed in the

metadata from early September of 2016, which depict him with fully grown-in hair on the lower abdomen and/or pubic region. Croyle claims that it is clear that he is the individual depicted in the other photographs because of his rings and the interior details of his bedroom. Croyle further claims that it is not possible for Exhibit 17 to depict him, since that photograph was taken in August 2016.

The trial court considered Croyle's trial by ambush claim and determined that it lacked merit. The trial court reasoned:

> First, it is undisputed in the record that Croyle's trial counsel was aware that C.S. previously had identified Croyle in Exhibit 17 as early as August 9, 2018, 17 months prior to trial. The fact that C.S. later recanted his identification and told law enforcement that the other individual in the photograph was not Croyle does not result in any unfair surprise. Defense counsel was always aware that Exhibit 17 was not located on Croyle's computer and could have requested the digital file and metadata long before trial commenced in January 2020. He apparently did not do so.
>
> Second, Croyle's arguments that the Commonwealth capitalized on C.S.'s statements and purposely delayed disclosure to defense counsel are entirely unsupported in the record. C.S.'s identification of Croyle, after having previously retracted the identification, occurred during witness preparation on the Tuesday afternoon before the trial began on Wednesday morning. The District Attorney informed defense counsel and the [c]ourt promptly Wednesday morning, on the record, and there is no indication that the Commonwealth delayed to gain a trial advantage. In fact[,] just the opposite could be argued. C.S.'s about-face, his second about-face, weakened the Commonwealth's case because it gave the defense a further opportunity to argue that C.S. could not be trusted to tell the truth.
>
> Croyle's assertion of unfair surprise is disingenuous because, for at least six months between August 9, 2018, and February 12, 2019, the Exhibit 17 photograph was known to be a

major evidentiary issue and would have been a chief focus of defense counsel's discovery and trial preparation. To say that Croyle was unfairly prejudiced by C.S.'s last-minute reversal is a mischaracterization of the history of this case.

Finally, Croyle makes the argument that if his trial counsel had known earlier that Exhibit 17 would be admitted, he would have had time to compare Exhibit 17 with the photographs extracted from Croyle's mobile phone. Croyle asserts that by doing so, counsel would have discovered that Croyle had body hair in a photograph taken on September 1, 2016 while the person shown in Exhibit 17 had little or no visible body hair. The [c]ourt disagrees. First, it is not at all clear, as Croyle now suggests, that there is any material difference between the individuals in the two photographs. Second, the photographs extracted from Croyle's mobile phone were purportedly taken on September 1, 2016. C.S. indicated that Croyle took Exhibit 17 during their second encounter sometime in August 2016. Thus, days or weeks could have elapsed between the times the two photographs were taken. Even assuming that the individual performing anal sex in Exhibit 17 is less hairy than Croyle was in September 2016, enough time could have elapsed between the taking of the photographs to explain the difference.

Croyle drastically overstates the relevance of this distinction in this appeal. C.S.'s late re-identification of Croyle in Exhibit 17 was neither materially prejudicial nor an act of unfair surprise or ambush by the Commonwealth. Croyle's defense counsel cross-examined both C.S. and Trooper Vaccaro extensively about C.S.'s contradictory statements to the PSP and the Commonwealth. He emphasized those contradictions in both his opening and closing statements and argued vociferously to the jury that C.S. was not credible. The jury disagreed, as it was free to do, and the [c]ourt discerns no prejudice that would warrant a new trial.

Trial Court Opinion, 11/5/20, at 14-16 (footnote omitted).

We discern no abuse of discretion by the trial court in reaching its determination that no trial by ambush occurred as a result of C.S.'s re-identification of Croyle in Exhibit 17 on the afternoon before trial commenced. Croyle was aware of the photograph, as well as C.S.'s original identification of

Croyle in the photograph for at least seventeen months prior to trial. Moreover, as the trial court explained, C.S. maintained that Croyle was the individual performing anal intercourse on C.S. in Exhibit 17 for the first six months of the case, during which time the exhibit was a critical piece of evidence. Yet, during that time frame, Croyle made no request for the digital file or metadata associated with Exhibit 17. Finally, just as Croyle was aware that C.S. had changed his story from identification to non-identification, Croyle should have been equally aware of the possibility that C.S. could again change his story back to identification. Therefore, Croyle cannot claim that trial by ambush occurred in this matter, and his third issue warrants no relief.

In his fourth issue, Croyle contends that this Court should remand the case to the trial court for the production of the digital file and metadata associated with Exhibit 17. Croyle claims that, during the hearing on his post-sentence motions, he made a request to supplement the record with the digital file and metadata for Exhibit 17, if any, in the Commonwealth's possession. According to Croyle, the trial court granted the motion, but thereafter denied his post-sentence motions before any materials were provided by the Commonwealth. Croyle requests a limited remand for the production of the digital file and metadata so that the trial court could either grant post-trial relief to him or file a supplemental Pa.R.A.P. 1925(a) opinion.

The trial court considered Croyle's fourth issue and dismissed it as meritless. The trial court reasoned:

At the end of his second argument on Croyle's original and supplemental post-sentence motions, Croyle's counsel mentioned that he would like to make the digital file and metadata of Exhibit 17 part of the record. Presumably, defense counsel requested the metadata file so that the date on which the photo was taken, if part of the metadata extracted by law enforcement, could be compared to the dates included in the metadata from the photographs extracted from Croyle's mobile phone. Although the parties agreed that such a file, if accessible, would be turned over, the [c]ourt was not made aware in the days following the hearing that the digital file had been produced. The [c]ourt then ruled on Croyles' motions, anticipating the instant appeal and not wishing to further delay matters.

As has already been discussed at length, the entirety of Croyle's argument is that, had his trial counsel known far enough in advance that Exhibit 17 would be admitted, he could have requested and reviewed its metadata and compared the photograph with the photographs of Croyle taken from his mobile phone. The comparison, even if it had been made, is of marginal relevance. Further, the [c]ourt is not aware of whether the metadata for Exhibit 17 exists at all.

Trial Court Opinion, 11/5/20, at 16-17 (citations to the record omitted).

As explained previously, Exhibit 17 was an important piece of evidence for the first six months of the criminal case against Croyle, during which time C.S. maintained that Croyle took the photograph, the photograph was sent to C.S. from Croyle's Grindr account, and the photograph depicted Croyle performing anal intercourse on C.S. During that time period, defense counsel presumably would have been preparing for trial, anticipating the impact of Exhibit 17 on Croyle's defense, and could have requested the original digital file and metadata associated with the photograph. However, Croyle's counsel did not do so. While Croyle's counsel did object to the admission of Exhibit 17 at the inception of trial, he made no request for these materials at the time

of his objection. Nor did Croyle request a continuance in order to secure these materials. Indeed, no request was made for the original digital file or the metadata associated with Exhibit 17 until after the judgment of sentence was imposed.

Importantly, as the trial court explained, it remains unknown as to whether the original digital file or metadata exists. At the hearing on Croyle's post-trial motions, the prosecutor indicated that she did not know whether the requested materials were ever provided by the FBI to Trooper Vaccaro. She explained:

> Your Honor, I am uncomfortable saying[ w]e can provide that. I just don't know whether it is contained within the imagine [*sic*] that the Commonwealth has or not. I can say that what [Trooper Vaccaro] had[,] had come from the FBI. I would have to look into whether there is any metadata on that.

N.T, 8/27/20, at 16. The prosecutor further explained that "I know there is a digital file. I just don't know if that is the original. I am not sure." *Id*. at 17. Nevertheless, she indicated that "[defense counsel] has what was given back from the FBI -- he would have that." *Id*. at 16.

While the prosecutor informed the court that she would look into it and get back to the trial court and defense counsel, she apparently did not do so. Nor is there any indication that defense counsel ever attempted to follow-up with the prosecutor to determine if she was able to determine whether the original digital file or metadata had been obtained by the FBI during its investigation. Thus, while the record is clear that whatever evidence the

Commonwealth had in its possession regarding Exhibit 17 was provided to the defense, the record is silent as to whether the original digital file and associated metadata exists.

The law of Pennsylvania is well-settled that matters which are not of record cannot be considered on appeal as an appellate court is limited to considering only the materials in the certified record when resolving an issue. **See Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006) (*en banc*); **see also Commonwealth v. Garvin**, 50 A.3d 694, 700 (Pa. Super. 2012) (holding that for purposes of appellate review, what is not in the certified record does not exist).

Our law is also unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. **See Commonwealth v. Kleinicke**, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*); **see also Preston**, 904 A.2d at 7 (explaining that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts).

Moreover, "[i]n the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower . . . for the purpose of unearthing . . . exhibits . . . that . . . [were] never were formally introduced and made part of the certified record." **Preston**, 904 A.2d at 8

- 16 -

(*citing* **Commonwealth v. Blystone**, 617 A.2d 778, 783 n.4 (Pa. Super. 1992)).

In the instant matter, there is no indication in the record that the original digital file or metadata associated with Exhibit 17 was ever accessible to or obtained by the FBI. Nor is there any indication that Croyle followed up with the prosecutor to find out whether or not the FBI had ever obtained these items. Accordingly, due to the absence of these items in the certified record, there is no support for Croyle's argument and, thus, there is no basis on which relief could be granted. We therefore decline to remand the instant matter for supplementation of the record.

In his fifth issue, Croyle contends that the trial court abused its discretion in permitting Trooper Vaccaro to testify regarding his opinions about the veracity of children in sexual abuse cases. Our standard of review regarding the admission of testimonial evidence is the same abuse of discretion standard discussed above. **See Benvenisti-Zarom**, 229 A.3d at 25.

Further,

> Expert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted in the relevant field.

**Commonwealth v. Maconeghy**, 171 A.3d 707, 712 (Pa. 2017) (citing Pa.R.E. 702).

In cases of sexual assault,

a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

42 Pa.C.S.A. § 5920(b)(1). Additionally, an expert witness "may testify to facts and opinions regarding specific types of victim responses and victim behaviors." *Id*. § 5920(b)(2). However, a properly qualified expert providing testimony pursuant to section 5920 may not offer opinions regarding the credibility of any witness, including the victim. *See Commonwealth v. Jones*, 240 A.3d 881 (Pa. 2020); 42 Pa.C.S.A. § 5920(b)(3).

Croyle claims that, on three separate occasions during Trooper Vaccaro's direct examination, his counsel objected to the trooper's testimony based on a lack of foundation as to the relevance of his opinions about other children. The prosecutor first inquired: "Now, when [C.S.] doesn't disclose initially when he first mentions Mr. Croyle, is that common in a child sex assault investigation?" N.T., 1/9/20, at 35. The prosecutor then inquired as to the hundreds of child sexual assault cases that the trooper had conducted, as follows: "[i]n those investigations, has every child told you during your first interview what happened to them?" *Id*. Finally, the prosecutor asked: "[h]ave there been times when you have not believed a child in these types of investigations?" *Id*. at 37.

According to Croyle, this type of testimony implicates § 5920. Croyle asserts that Trooper Vaccaro's testimony ran afoul of § 5920 because the trooper was not offered or qualified as an expert witness and he offered his opinion about other children's credibility and about C.S.'s credibility. Croyle maintains that the trial court should have sustained his objections and precluded the trooper's irrelevant and impermissible opinion testimony which was highly prejudicial to Croyle.

In order to preserve a claim of error for appellate review, a litigant must make a specific objection before the trial court in a timely fashion and at the appropriate stage of the proceedings. *See Commonwealth v. May*, 887 A.2d 750 (Pa. 2005) (reiterating that the absence of a specific and contemporaneous objection to error waives issue on appeal); *see also* Pa.R.A.P. 302 (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal). The absence of a contemporaneous objection in the court below constitutes a waiver of the claim on appeal. *See Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008); *see also Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009) (holding that, on appeal, this Court will not consider assignments of error that were not brought to the lower court's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated).

Here, Croyle concedes that each of his counsel's objections to the questions posed by the prosecutor were based on relevancy. At no time did defense counsel raise an objection based on § 5920. Thus, because this particular objection was not presented to the trial court at the time the prosecutor posed the questions to the trooper, the issue is waived.

In his sixth issue, Croyle challenges the weight of the evidence supporting his convictions. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the

[trial] court." **Commonwealth v. Talbert**, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original).

Croyle contends that the verdict was contrary to the weight of the evidence because C.S.'s testimony was impaired and unreliable such that the verdict of guilt based on his accusations shocks one's sense of justice. Croyle points out that, while C.S. initially stated that he was motivated by a desire to have the charges dropped against Croyle, he thereafter testified that he was not motivated by that purpose. Croyle additionally points out that, while C.S. agreed that he feared the law when he was threatened with prosecution for child pornography, he then denied that this was why he changed his account. Croyle asserts that C.S. claimed to be 19 in his Grindr profile even

though he was only 13 at the time of the alleged incidents and knew that persons his age were not allowed on Grindr. Croyle indicates that C.S. admitted that his motivation was to seek money from other people on Grindr, rather than specifically seeking sex. According to Croyle, this testimony indicates a propensity to lie to obtain financial gain, and diminishes C.S. as a reliable source. Croyle argues that the jury ignored the incredible and unsound nature of C.S.'s allegations, and credited his testimony even though he admitted lying to law enforcement and changing his statements to them. Croyle also claims that C.S.'s testimony was clearly motivated by the threat of prosecution.

The trial court considered Croyle's weight challenge and concluded that it lacked merit. The trial court reasoned:

> Despite its verbosity, Croyle's challenge to the weight of the evidence argues only a single point: that the jury's credibility determination concerning C.S.'s testimony was wrong. Croyle ignored throughout his post-sentence motions, and now does so again on appeal, the corroborating evidence presented by the Commonwealth. Croyle maintained a designated file of photographs of C.S. that he obtained on Grindr. C.S. further described the inside of Croyle's apartment and the location, appearance, and contents of the adult sex toys used by Croyle and found in his nightstand. Both C.S. and Trooper Vaccaro offered explanations for why C.S.'s prior statements to law enforcement were contradictory. These facts, taken together, sufficiently corroborate C.S.'s testimony to support the jury's credibility determinations. The verdict simply was not so against the weight of the evidence that it shocks the judicial conscience.

Trial Court Opinion, 11/5/20, at 11-12.

We discern no abuse of discretion by the trial court in determining that the jury's verdict of guilt did not shock the judicial conscience. The jury was free to believe C.S's testimony and to reject the version of events proffered by Croyle during his testimony. The trial court was not required nor permitted to re-weigh C.S.'s credibility. Accordingly, Croyle's weight challenge entitles him to no relief.

In his seventh issue, Croyle challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *See Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[A.] § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

In the instant case, Croyle filed a timely notice of appeal, preserved his claims in a timely post-sentence motion, and included in his appellate brief a separate Rule 2119(f) statement. As such, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. *See Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to review the Rule 2119(f) statement to determine whether Croyle has presented a substantial question for our review.

In his Rule 2119(f) statement, Croyle presents a vague challenge to "the disparate sentences between himself and an erstwhile co-defendant." Croyle's Brief at 12. However, nowhere in his Rule 2119(f) statement does he identify the "erstwhile co-defendant" or the crimes for which the unnamed individual was convicted. Nor does Croyle explain the sentence which the unidentified co-defendant received and how it is purportedly disparate to the one Croyle received.

Moreover, while we recognize that an averment by an appellant of disparate sentences between two or more co-defendants constitutes a substantial question necessitating our exercise of jurisdiction to review, *see Commonwealth v. Krysiak*, 535 A.2d 165, 167 (Pa. Super. 1987), Croyle had no co-defendant in the instant matter.[2] Thus, even if we were to overlook

_____

[2] As the trial court explained, the other criminal defendant to which Croyle is referring, Mark Feeney, "did not engage in criminal conduct in concert, on the same dates, under the same circumstances. Rather, [Croyle and Feeney]

- 24 -

the inadequacy of Croyle's Rule 2119(f) statement, he has not raised a substantial question for our review.

In his final issue, Croyle asserts that, "to the extent that this Court recognizes multiple errors which it deems harmless individually, [Croyle] requests that the Court consider the cumulative effect and grant a new trial accordingly." Croyle's Brief at 46.

Under the cumulative error doctrine, when the failure of individual claims is based upon a lack of prejudice, the cumulative prejudice arising from those individual claims may properly be considered. *See Commonwealth v. Simpson*, 112 A.3d 1194, 1205-06 (Pa. 2015). However, it is well-settled that no number of failed claims may collectively warrant relief if they do not do so individually. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). In other words, to the extent that individual claims on appeal are rejected for lack of arguable merit, there is no basis for an accumulation claim. *See Commonwealth v. Sattazahn*, 952 A.2d 640, 671 (Pa. 2008).

Here, as each of Croyle's individual claims of trial court error fail for lack of merit, there is no basis for an accumulation claim. Accordingly, we deny his request for a new trial based on cumulative error by the trial court.

---

committed similar acts, with the same victim, at different times and under similar circumstances." *See* Trial Court Opinion, 11/5/20, at 12. While the Commonwealth initially sought to try the cases together, Feeney objected, and the cases were severed. *Id*. Accordingly, Feeney was not Croyle's co-defendant since they were tried before and sentenced by two different judges. *Id*.

Having found no basis to provide relief on any of Croyle's issues, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2021