J-S61033-19

2020 PA Super 34

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                          :
                    v.                    :
                                          :
                                          :
LUNA BENVENISTI-ZAROM        :
                                          :
            Appellant          :     No. 342 EDA 2019

Appeal from the Judgment of Sentence Entered December 20, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004933-2017

BEFORE:   BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:          **FILED FEBRUARY 11, 2020**

Appellant Luna Benvenisti-Zarom appeals the judgment of sentence entered by the Court of Common Pleas of Montgomery County after Appellant was convicted of aggravated assault by vehicle while driving under the influence (DUI), aggravated assault by vehicle, DUI (general impairment), DUI (high rate of alcohol), recklessly endangering another person (REAP), and several summary offenses.  After careful review, we affirm.

The trial court aptly summarized the factual background and procedural history of the case as follows:

> On February 21, 2017, at approximately 11:22 p.m., at mile marker 20.9 of the northbound Northeast Extension (Interstate 476), a Honda Accord driven by [Appellant] collided with a Volkswagen Passat being driven by Kelley Tansley ("Victim"). Pennsylvania State Trooper Gregory Neely arrived at the accident scene shortly afterwards and observed [Appellant] lying on the ground by the driver's door of the Honda Accord.  Trooper Neely's

_____

[*] Former Justice specially assigned to the Superior Court.

assessment of the scene led him to conclude the accident was the result of a head[-]on collision caused by [Appellant's] vehicle traveling southbound in the far left northbound lane of the Northeast Extension.

[Appellant] was grabbing her stomach and yelled at Trooper Neely to "go away." The trooper believed [Appellant] was injured. EMS workers subsequently moved [Appellant] into an ambulance which had arrived at the scene several minutes later. Trooper Neely spoke with [Appellant] while she was seated in the ambulance and noted the strong odor of alcohol on her breath.

Following a time period of approximately thirty (30) to forty-five (45) minutes, the ambulance transported [Appellant] to a helicopter which had landed on the Northeast Extension. The helicopter airlifted [Appellant] to Thomas Jefferson University Hospital ("Jefferson Hospital") in Philadelphia, PA for treatment of injuries she sustained in the accident. During the time period in which [Appellant] was seated in the ambulance, Trooper Neely did not ask [Appellant] to take a blood test because she was being treated by medical personnel. At the accident scene, authorities towed [Appellant's] vehicle after she was airlifted to Jefferson Hospital. Pennsylvania State Trooper Richard Hawkins subsequently received instructions to see [Appellant] at Jefferson Hospital.

Upon [Appellant's] arrival at Jefferson Hospital, an examination revealed she required surgery for her injuries. At 1:20 a.m. on February 22, 2017, medical personnel administered 100 mcg of Fentanyl to [Appellant] to relieve her pain. At 1:55 a.m., Trooper Hawkins arrived at Jefferson Hospital and was able to speak with [Appellant] in one of the medical rooms. The trooper asked [Appellant] questions regarding how the accident occurred. In her responses to the trooper's questions, [Appellant] indicated that she was at a friend's house earlier in the evening where she had consumed three glasses of wine. [Appellant] did not recall how the crash occurred. Trooper Hawkins suspected [Appellant] had driven under the influence of alcohol and advised her that she was under suspicion for DUI. The trooper subsequently read to [Appellant] from a DL-26B form. [Appellant] consented to a blood draw and although she was unable to sign the DL-26B form due to multiple "tubes" in her hand, [Appellant] provided oral consent. Trooper Hawkins observed the blood draw, which occurred at 2:02 a.m. and later transported the blood specimen to Trooper Neely. Test results performed on

[Appellant's] blood indicated a [blood alcohol content (BAC)] of .127%. On April 19, 2017, authorities formally charged [Appellant with the aforementioned offenses].

Trial Court Opinion ("T.C.O."), 6/6/19, at 1-3.

On December 17, 2017, Appellant filed a motion for discovery in which she sought the "black box" from her vehicle that would contain information about her direction of travel at the time of the accident. Initially, the Commonwealth did not investigate Appellant's car, which was towed from the accident scene. On February 11, 2018, the prosecutor responded in an email that the Commonwealth did not have a black box in its possession. In a subsequent hearing, the prosecutor asserted that he did not have possession of a black box from Appellant's vehicle, had never sought black box data before, and had not researched how to obtain such data.

Thereafter, the defense submitted an accident reconstruction report, in which its expert concluded that Appellant was not traveling southbound in the northbound lane of the Northeast Extension when the accident occurred. The report criticized the prosecution for failing to obtain black box data from Appellant's vehicle.

In response, the prosecution sought the assistance of Pennsylvania State Police (PSP) expert Sergeant Charles Burkhardt, who concluded that finding the black box from Appellant's vehicle was necessary to rebut the claims in the defense's accident reconstruction report. After locating the black box from Appellant's vehicle in a junkyard in Carbon County, Sergeant Burkhardt obtained a warrant to obtain the black box, analyzed the data, and

produced a report in which he concluded that Appellant's vehicle was traveling southbound in the far left northbound lane of the Northeast Extension when the accident occurred. Sergeant Burkhardt entered the black box into evidence, provided the defense a copy of the data along with his expert report, and provided Appellant an opportunity to inspect the black box. Thereafter, Appellant did not file a request to inspect the black box.

On August 14, 2018, Appellant filed a motion to suppress (1) her blood test results, (2) statements she made to the police and (3) the black box seized from her vehicle. On the same day, Appellant also filed a motion to dismiss the charges, as she claimed, *inter alia*, the Commonwealth violated discovery rules by misleading the defense regarding the existence of the black box. Appellant claimed that she could not afford to commission an expert to perform a new accident reconstruction report using the black box data. On August 17, 2018, the Commonwealth filed a Motion *in Limine* to preclude portions of the report of defense expert Dr. Hedva Shamir.

On August 31, 2018, the trial court denied Appellant's suppression motion and her motion to dismiss the charges. However, to avoid unfair prejudice, the trial court permitted Appellant to obtain a new accident reconstruction report and restricted the Commonwealth from presenting its accident reconstruction report or its expert testimony based on the black box data in its case in chief. If the defense's expert referenced the black box data on direct examination, the Commonwealth would be permitted to offer its corresponding accident reconstruction evidence in rebuttal.

In addition, the trial court granted the Commonwealth's motion in part, finding *inter alia*, that Dr. Shamir was prohibited from testifying as to the "validity of Appellant's consents." Order, 8/31/18, at 1. However, the trial court also indicated that the Commonwealth's motion was denied in part as Dr. Shamir would be permitted to testify as to the medical conditions of Appellant and the victim as a result of the automobile accident. At trial, Appellant chose not to present Dr. Shamir as a witness and did not attempt to offer her accident reconstruction report into evidence.

On September 26, 2018, the jury found Appellant guilty of aggravated assault by vehicle while DUI, aggravated assault by vehicle, REAP, and two counts of DUI, while the trial court found Appellant guilty of all the summary offenses. After her sentence was imposed, Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises seven issues for our review on appeal:

1. Whether the Trial Court erred in denying Appellant's pretrial motion to suppress the results of Appellant's blood alcohol test where there was no warrant and a lack of consent?

2. Whether the Trial Court erred in denying Appellant's pretrial motion to suppress where the blood draw occurred after the two-hour window required under 75 Pa.C.S.A. § 3802(b) and was done without good cause shown for violation of that rule?

3. Whether the Trial Court erred in excluding the proffered testimony of Appellant's expert witness Hedva Shamir, M.D., on the question of consent?

4. Whether the Trial Court erred in allowing the Commonwealth the opportunity to present expert testimony regarding consent?

5. Whether there was prosecutorial misconduct so egregious that it prevented Appellant from having a full and fair opportunity to respond on the issues of fault and causation where the Commonwealth failed to timely recover and produce to the defense the black box from Appellant's vehicle?

6. Whether the Trial Court erred in permitting the Commonwealth to show to the jury the accident/scene reconstruction video created by the Pennsylvania State Police which was highly prejudicial as it was not probative of the details of the accident?

7. Whether the Trial Court erred in permitting the Commonwealth to present the opinion of Trooper Neely as to how the accident occurred when such testimony was tantamount to an expert opinion without Trooper Neely having been qualified as such and that opinion was critical to the issues of causation and fault in the case?

Appellant's Brief, at 6-7 (reordered for ease of review).

Appellant's first two arguments challenge the trial court's decision to deny her motion to suppress her blood alcohol content (BAC) test results.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa.Super. 2019) (citations and quotation marks omitted). In addition, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa.Super. 2016) (*citing In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1087 (2013)).

Specifically, Appellant claims she was incapable of providing voluntary consent to the warrantless blood test as she was under the influence of narcotic pain medication that was given to her intravenously by hospital personnel to manage her pain and prepare her for surgery. Appellant also asserts that her BAC test results should have been suppressed as officers did not have good cause to obtain the warrantless blood test outside the two-hour window after the accident in violation of 75 Pa.C.S.A. § 3802(g).

We are guided by the following well-established principles:

> The Fourth Amendment to the Constitution of the United States and Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania both prohibit unreasonable searches and seizures. The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions. If an officer performs a blood-draw search without a warrant, it is unreasonable and therefore constitutionally impermissible, unless an established exception applies. Exceptions to the warrant requirement include the consent exception. For the consent exception to apply, the consent must be voluntary.

*Commonwealth v. Johnson*, 188 A.3d 486, 489 (Pa.Super. 2018) (quoting *Commonwealth v. Evans*, 153 A.3d 323, 328 (Pa.Super. 2016) (quotation marks omitted)).

In determining whether Appellant provided voluntary consent to the warrantless blood test, we apply the following precedent:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.
>
> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

*Commonwealth v. Krenzel*, 209 A.3d 1024, 1028-29 (Pa.Super. 2019) (quoting *Commonwealth v. Venable*, 200 A.3d 490, 497 (Pa.Super. 2018)).

Appellant argues that she could not have given voluntary consent to the trooper's request for blood testing in light of her mental and emotional state as she was severely injured, was taken to the hospital unwillingly by helicopter, and under the influence of a narcotic given by hospital personnel.

While we acknowledge Appellant had been administered a dose of Fentanyl to relieve her pain thirty-five minutes before speaking with Trooper

Hawkins, Appellant fails to address Trooper Hawkins' testimony that Appellant was alert and able to have an intelligent conversation at the time he interviewed her. Trooper Hawkins, who had received training in identifying impaired drivers, reported that Appellant did not appear to be under the influence of a controlled substance and did not display an inability to answer his questions. During this interview, Appellant indicated on the night of the accident, she had consumed three glasses of wine at a friend's house but could not recall how the accident occurred. Based on this statement, Trooper Hawkins suspected Appellant was driving under the influence of alcohol when the accident occurred. Therefore, Trooper Hawkins requested that Appellant submit to blood testing and read her the relevant DL-26 form.

At trial, Trooper Hawkins asserted he had no reservations about Appellant's ability to understand the information he presented to her in the DL-26 form. Moreover, just minutes before speaking to Trooper Hawkins, Appellant gave verbal consent for surgery and treatment to hospital personnel, who also did not express any reservation about Appellant's ability to give consent. As the record supports the trial court's finding that Appellant rendered voluntary consent to Trooper Hawkins's request for a blood draw, we conclude that the trial court did not err in refusing to suppress Appellant's BAC test results on this basis.

We also reject Appellant's claim that her BAC test results should have been suppressed as her blood was tested more than two hours after her

accident. Appellant was convicted of DUI under Section 3802(a)(1) and 3802(b) of the Vehicle Code which provide:

> (a) General impairment.—
>
>> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>> ***
> (b) High rate of alcohol.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802.

The requirement in Section 3802(b) that a defendant's blood must be taken within two hours after the defendant has been in control of a vehicle is subject to a "good cause" exception:

> **Exception to two-hour rule.--**Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
>
>> (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
>>
>> (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S.A. § 3802(g).

In this case, we agree with the trial court that the prosecution presented "good cause" to explain why officers failed to test Appellant's blood within two hours of her accident. When Trooper Neely arrived at the accident scene, he did not proceed to interview Appellant who appeared to be severely injured. Appellant was lying on the ground beside her vehicle, clutching her stomach in pain, and screaming at Trooper Neely to "go away." Notes of Testimony ("N.T."), Pre-trial motion hearing, 8/27/18, at 69.

Emergency personnel arrived on the scene at nearly the same time as Trooper Neely and began to treat Appellant immediately as she was lying on the ground. Thereafter, emergency personnel transported Appellant to the back of an ambulance and continued to treat her while they awaited the arrival of a helicopter to airlift Appellant to a local hospital. Approximately thirty to forty-five minutes later, a helicopter landed on the Northeast Extension and transported Appellant to Jefferson Hospital.

When Trooper Neely was asked why he did not ask Appellant to consent to blood testing during this thirty to forty-five minute period while Appellant was being treated by medical personnel, Trooper Neely testified that "[i]n my career, I've never asked someone to submit to a chemical test in the back of an ambulance when they're being treated for injuries, so I didn't – that's not the time to do that." *Id*. at 93. In light of the circumstances in this case, we agree with the trial court's finding that Trooper Neely had good cause to

conclude that "there was too much uncertainty surrounding [Appellant's] medical condition to order a blood test" at the accident scene. T.C.O. at 23.

In addition, the parties agree that Appellant did not consume any alcohol between the time of the accident and her blood testing two hours and forty minutes later. While Appellant was administered Fentanyl between this period, Appellant does not contend that testing for alcohol in her blood would in any way be affected by the addition of the intravenous narcotic into her bloodstream.

Moreover, Appellant's argument based on the "two hour rule" does not entitle her to suppression of her BAC test results in her prosecution under Section 3802(a)(1) (DUI: general impairment – incapable of safely driving), as this subsection does not include language discussing the "two hour" requirement. As such, our courts have held that "evidence of blood tests taken more than two hours after driving is admissible under subsection (a)(1) without resort to section 3802(g)." *Commonwealth v. Eichler*, 133 A.3d 775, 787 (Pa.Super. 2016) (citing *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871, 879 (2009)). Accordingly, we conclude that the trial court did not err in refusing to suppress Appellant's BAC test results.

In her third claim, Appellant asserts the trial court abused its discretion in "excluding the proffered testimony of Appellant's expert witness, Hedva Shamir, M.D. on the question of consent." Appellant's Brief, at 6. Similarly, in her fourth claim, Appellant argues that the trial court should not have allowed the Commonwealth to present expert testimony regarding consent.

Our standard of review is as follows:

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

**Commonwealth v. Cosby**, \_\_\_A.3d\_\_\_, 3314 EDA 2018, at *16 (Pa.Super. Dec. 10, 2019) (quoting **Commonwealth v. Minich**, 4 A.3d 1063, 1068 (Pa. Super. 2010) (citations and quotation marks omitted)).

It is well-established that "[e]xpert testimony is generally admissible if: the witness has a specialized knowledge beyond that possessed by the average layperson; such knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted in the relevant field." **Commonwealth v. Maconeghy**, 642 Pa. 770, 778, 171 A.3d 707, 712 (2017) (citing Pa.R.E. 702).

In this case, the Commonwealth filed a "Motion in *Limine* to Preclude Portions of Defendant's Medical Expert Report, asking the trial court to limit the scope of defense expert Dr. Shamir's testimony on various topics. Dr. Shamir is an emergency medicine board-certified physician who submitted an expert report on several issues in this case, including her opinions on the cause and manner of the accident (accident reconstruction), the rate of speed the vehicles were traveling before the accident, as well as the validity of Appellant's consent to blood testing after being given an intravenous narcotic at the hospital to relieve her pain.

The trial court granted the Commonwealth's motion in part, finding *inter alia*, that Dr. Shamir was prohibited from testifying as to the "validity of Appellant's consents." Order, 8/31/18, at 1. However, the trial court also indicated that the Commonwealth's motion was denied in part as Dr. Shamir was permitted to testify as to the medical conditions of Appellant and the victim as a result of the automobile accident. Thereafter, Appellant chose not to present Dr. Shamir as a witness at trial.

While Appellant asserts that the trial court erred in restricting Dr. Shamir from testifying at trial on the issue of the validity of Appellant's consent to blood testing, we fail to see how this testimony would constitute relevant evidence at trial. The trial court previously rejected Appellant's argument that her consent to blood testing was invalid when it denied her motion to suppress the BAC testing results. As testimony concerning Appellant's consent to blood testing would not have been relevant to prove an element of the offenses charged in this case or a valid defense at trial, we agree with the trial court's assessment that Dr. Shamir's testimony on the issue of consent would only "cause confusion and prejudice." T.C.O. at 7. Accordingly, the trial court did not abuse its discretion in excluding Dr. Shamir's testimony on this issue.

Appellant also argues that it was unfair for the trial court to allow the prosecution's expert witness, Dr. David Rittenhouse, to testify to Appellant's ability to consent to blood testing. Dr. Rittenhouse was the emergency physician on duty at Jefferson Hospital at the time Appellant was brought for treatment after the accident in question.

However, Appellant fails to recognize that she did not object to the scope of Dr. Rittenhouse's testimony during trial. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). As Appellant failed to preserve this issue review by making a proper objection in the lower court, we find her argument to be waived.

Fifth, Appellant accuses the Commonwealth of prosecutorial misconduct in failing to timely recover and produce for the defense the "black box" from Appellant's vehicle. Appellant claims she did not have sufficient opportunity to have her expert evaluate this evidence and was denied a fair trial.

> Our Supreme Court "has limited the prosecution's disclosure duty such that it does not provide a general right of discovery to defendants." **Commonwealth v. Cam Ly**, 602 Pa. 268, 293, 980 A.2d 61, 75 (2009). "Under **Brady** [**v. Maryland**, 373 U.S. 83 (1963)], the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights." **Id.** "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." **Id.** (quoting **United States v. Bagley**, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.3d.2d 481(1985)). "[T]o establish a **Brady** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa.Super. 2012) (citing **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297, 308 (2011)). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." **Id.** (citing **Commonwealth v. McGill**, 574 Pa. 574, 832 A.2d 1014, 1019 (2003)) (citation omitted).
>
> Nevertheless, "[t]he withheld evidence must have been in the exclusive control of the prosecution at the time of trial."

- 15 -

> *Haskins*, *supra*. "*Brady* is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources." *Commonwealth v. Roney*, 622 Pa. 1, 23, 79 A.3d 595, 608 (2013) (citing *Commonwealth v. Smith*, 609 Pa. 605, 17 A.3d 873, 902–03 (2011)) (citation omitted) (emphasis added).

*Commonwealth v. Robinson*, 122 A.3d 367, 373 (Pa.Super. 2015).

In this case, the Commonwealth did not suppress the black box evidence sought by Appellant. Instead, the prosecutor indicated to the defense that he did not have possession of the black box evidence as the prosecution initially had not planned on presenting expert testimony on this topic. Appellant does not explain why her expert could not have independently uncovered the black box data or why she believes that the Commonwealth was in exclusive control of this evidence, when Appellant's vehicle had been towed to a junkyard owned by a third party. The prosecution reconsidered its strategy and subsequently obtained the black box data after Appellant's expert report criticized the prosecution for failing to retrieve this evidence.

In addition, Appellant has not established that the black box data was exculpatory evidence as the prosecution claims that the black box data confirms its theory that Appellant was driving southbound on the northbound lane of the Northeast Extension when the accident occurred.

Moreover, Appellant has not shown that the black box data was material such that she was prejudiced by its omission. To establish prejudice, Appellant was required to demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different." **Commonwealth v. Treiber**, 632 Pa. 449, 493, 121 A.3d 435, 461 (2015). The prosecution presented ample evidence of Appellant's responsibility for the crash, as the victim testified that she could not avoid Appellant's car which came "right at" her while she was driving in her own lane. N.T., 9/24/18, at 99. In addition, Trooper Neely testified that based on his observation of the placement of the cars and accident debris, he could infer that Appellant was traveling the wrong direction on the highway when the crash occurred. Appellant could not remember how the accident occurred. Accordingly, the trial court did not err in denying Appellant's **Brady** claim.

In her sixth and seventh arguments, Appellant argues that the trial court erred in allowing the Commonwealth to present a video created by the PSP to reconstruct how the accident occurred and in permitting Trooper Neely to offer an expert opinion as to the cause and manner of the accident in question when the officer had not been qualified as an expert.

Both claims are waived as Appellant did not properly raise these arguments in the lower court. **See** Pa.R.A.P. 302(a), **supra**. While Appellant objected to the admission of the Commonwealth's reconstruction video in her suppression motion, defense counsel admitted twice at the pre-trial motion hearing that the defense would not pursue a challenge to the admission of the video and did not object to the video being shown to the jury. N.T., 8/27/18, at 15-16, 328. Similarly, Appellant did not object to Trooper Neely's testimony that, based on his observations of the placement of the vehicles and debris, he believed Appellant was driving southbound in the northbound lane of traffic

- 17 -

on the highway when the accident occurred.  Accordingly, we decline to review the merits of these arguments.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/20

.