J-S36044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY LEE HARTLEB | : | |
| | : | |
| Appellant | : | No. 216 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 30, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002127-2020

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: MARCH 6, 2023**

Appellant, Corey Lee Hartleb, appeals from the judgment of sentence of 6 to 12 years' incarceration and 3 years of probation imposed on him after he was convicted by a jury of aggravated assault serious bodily injury, aggravated assault bodily injury with a deadly weapon, and possession of a weapon.[1]  For the reasons set forth below, we affirm.

This case arises out of a fight outside a bar on the night of January 31 to February 1, 2020, in which Appellant stabbed a man (Victim) in the neck. On June 12, 2020, Appellant was charged with aggravated assault serious

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2702 (a)(4), and 907(b), respectively.

bodily injury, aggravated assault bodily injury with a deadly weapon, possession of a weapon, and attempted murder.

In the first days of its investigation of the assault, the police obtained video footage from the bar's surveillance cameras inside of the bar that showed Appellant and Victim getting into an argument and leaving the bar with two other people before the fight occurred and Victim being brought back into the bar severely injured. The Commonwealth provided these videos to Appellant in pretrial discovery. On March 31, 2021, Appellant filed a motion seeking to compel the Commonwealth to produce video from the bar's outdoor surveillance camera. A hearing was held on this motion at which the bar owner and a police detective testified. The bar owner testified that there was video footage from a camera outside the bar that showed the fight and that she believed that the videos that she gave the police included that footage. N.T., 5/11/21, at 5-8. The police detective testified that when he viewed the videos received from the bar, he saw that they had only footage of the inside of the bar, that he contacted the bar owner to obtain outdoor surveillance video, and that she told him that the only outdoor camera was by the door and the video from this camera was too dark to see anything. *Id.* at 9-11. He testified that he made further attempts to obtain this outdoor video, but that the bar owner did not turn it over to the police. *Id.* at 11.

On May 14, 2021, Appellant filed a motion to dismiss the charges pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963) based on the

Commonwealth's failure to provide the outdoor video. The trial court denied this motion on July 14, 2021. Prior to trial, Appellant also moved to exclude the testimony of a trauma surgeon who treated Victim's injuries on the ground that no expert report was provided, and the trial court ordered that this witness could testify to her observations as a lay witness, but could not testify as an expert. N.T. Motion in *Limine* Hearing, 9/14/21, at 11-17.

The charges against Appellant were tried to a jury on September 14 through 16, 2021. Six witnesses testified for the Commonwealth: Victim, a friend of Victim who went to the bar with him, the trauma surgeon, and three police officers and detectives who investigated the case. The Commonwealth also introduced in evidence and played videos of the inside of the bar showing the argument between Appellant and Victim before the fight and showing Victim being brought back in the bar after he was stabbed and later events. Appellant called the bar owner and a defense investigator as witnesses and testified in his own defense.

Victim testified that on January 31, 2020 he went to the bar with his friend and was drinking and flirting with a woman who sat down next to him when Appellant came up to him and accused him of attacking Appellant's brother a few years earlier. N.T. Trial, 9/14/21, at 38-45. Victim testified that he told Appellant that he didn't know what Appellant was talking about, that Appellant would not leave him alone, and that when he and Appellant were arguing loudly with each other, the bartender told them to "take it

outside." *Id.* at 45-48. Victim testified that he, his friend, and his cousin, who was also at the bar, followed Appellant outside, that he and Appellant continued arguing, and that when he said that he was going back in to drink, Appellant punched him in the face. *Id.* at 48-51, 64-65, 75. Victim testified that he fought back after Appellant punched him and that as he and Appellant were fighting, they ended up on the ground and he got on top of Appellant. *Id.* at 51-53, 65. Victim testified that when he got on top of Appellant, he saw Appellant raise a knife and that Appellant stabbed him in the neck. *Id.* at 37-38, 52-57.

Victim's friend testified that he was with Victim at the bar drinking and Appellant came up to Victim and started arguing with Victim. N.T. Trial, 9/14/21, at 85-89. Victim's friend testified that he, Victim, and Victim's cousin followed Appellant outside and that after they got outside, Appellant began throwing punches at Victim and Victim fought back. *Id.* at 89-92. Victim's friend testified that Victim and Appellant fell to the ground, that Victim got on top of Appellant, and that he came over to try break up the fight. *Id.* at 94. Victim's friend testified that when he came over, Appellant grabbed his leg and he saw blood coming out of Victim's neck. *Id.* at 94-96. Victim's friend testified that he helped bring Victim back into the bar and that after he was back in the bar, he saw blood running down his own leg and found that he had been stabbed twice in the leg. *Id.* at 95-99, 101-03. Victim's friend also testified that no one other than Appellant was fighting with Victim and that

Appellant was the only person who struck him or Victim. *Id.* at 93-96, 117-18.

The trauma surgeon testified that Victim's trachea was cut, that he needed a tube inserted to assist his breathing, and that the cut was only millimeters from Victim's carotid artery. N.T. Trial, 9/14/21, at 122-28. The police officer who went to the bar in response to the report of a fight and stabbing testified that he called emergency medical services to the scene and that later that night the bar owner showed him both video of the inside of the bar and a video recording from a camera outside of the bar. N.T. Trial, 9/15/21, at 13-14, 20. The officer testified that the outdoor video showed a fight, but that the participants moved away from the camera during the fight and that the video quality was too poor to identify the participants in the fight and who did what in the fight. *Id.* at 14-15, 32.

The police detective who obtained the videos from the bar a day or two after the incident testified that he requested all of the video footage from the time of the incident and that the bar owner selected and downloaded the videos onto the police thumb drive that he supplied. N.T. Trial, 9/14/21, at 31-33. A second police detective testified that he reviewed the videos right after the thumb drive was brought back and that the only videos were footage of the inside of the bar. N.T. Trial, 9/15/21, at 45. He also testified that he called the bar owner and asked for the outdoor video, that she told him that

quality of the outdoor video was poor, and that she did not provide the outdoor video, although he requested it. *Id.* at 45-46.

Appellant testified that he was working at the bar on the night of January 31, 2020 helping the bartender, that the woman with whom Victim was flirting asked Appellant to tell Victim to leave her alone and that he approached Victim and told him to leave her alone. N.T. Trial, 9/15/21, at 90-92, 96. Appellant testified that Victim walked away, that the woman resumed being friendly with Victim and accepting drinks from him, and that she again asked Appellant to tell Victim to leave her alone. *Id.* at 96-97, 122-25. Appellant testified that when he approached Victim and told him to leave the woman alone the second time, Victim argued with him, Victim's cousin came over, and Victim's cousin and the bartender told them to go outside. *Id.* at 98-102. Appellant testified that he, Victim, Victim's friend, and Victim's cousin went outside and that after they got outside, Victim punched him and he punched back. *Id.* at 102-05. Appellant testified that another person who had been in the bar then grabbed him from behind and got on top of him and that while he was fighting the person on top of him, Victim's friend came over and punched him and other people outside the bar attacked him. *Id.* at 105-06. He testified that he got away, but came back when the person who had been on top of him called out that Appellant "owe[d] him a fair fight" and fought one-on-one with him. *Id.* at 106-07. Appellant testified that he ran off again, but that Victim caught up to him, that they wound up on the ground with Victim on top of him, that he

got away a third time and went home after someone yelled "police" and pulled Victim off of him. *Id.* at 107-09. Appellant denied that he had a knife or stabbed anyone and testified that he did not know how Victim and Victim's friend were stabbed. *Id.* at 110, 143-44, 163-65. Appellant admitted that he did not call the police after the fight. *Id.* at 146-48.

The bar owner testified that she believed that she provided the outdoor video to the police in addition to the footage of the inside of the bar when the police initially came to get the video. N.T. Trial, 9/15/21, at 67-68. The bar owner further testified that she viewed the outdoor video with police on the night of the incident and that the outdoor video showed a fight that began near the door and moved away from the camera into the parking lot. *Id.* at 67, 70, 72-73. The defense investigator testified that she attempted to obtain the outdoor video from the police and the bar owner and was unable to obtain it. *Id.* at 84-88.

On September 16, 2021, the jury convicted Appellant of aggravated assault serious bodily injury, aggravated assault bodily injury with a deadly weapon, and possession of a weapon and acquitted him of the attempted murder charge. N.T. Trial, 9/16/21, at 37-38; Verdict Slips. On November 30, 2021, the trial court sentenced Appellant to 6 to 12 years' incarceration followed by 2 years of probation for the aggravated assault serious bodily injury conviction, a concurrent term of 1 year 9 months to 4 years' incarceration for aggravated assault bodily injury with a deadly weapon, and

a consecutive year of probation for possession of a weapon, resulting in an aggregate sentence of 6 to 12 years' incarceration followed by 3 years of probation. Sentencing Order. Appellant filed a post sentence motion on December 6, 2021 seeking dismissal of the charges, a new trial and a judgment of acquittal, and the trial court denied that motion on February 15, 2022. This timely appeal followed.

In this appeal, Appellant presents the following issues for our review:

A. [Whether] the trial court committed an error of law and/or abused its discretion when it denied Appellant's omnibus pretrial motion to dismiss pursuant to *Brady v. Maryland*.

B. [Whether] the trial court committed an error of law and/or abused its discretion when it permitted testimony of [the trauma surgeon].

C [Whether] the Commonwealth engaged in prosecutorial misconduct by engaging in burden shifting and mischaracterizing the burden of proof.

D. [Whether] the Commonwealth failed to present sufficient evidence to convict the Appellant beyond a reasonable doubt of both counts of aggravated assault and possession of a weapon.

Appellant's Brief at 3 (unnecessary capitalization removed). We first address Appellant's fourth issue, the sufficiency of the evidence claim, and then address his first, second, and third issues.

Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient

to prove every element of the offense beyond a reasonable doubt. "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Steele*, 234 A.3d 840, 845 (Pa. Super. 2020) (quoting *Commonwealth v. Colon-Plaza*, 136 A.3d 521 (Pa. Super. 2016)) (citations omitted, brackets in original).

The only element of the offense of aggravated assault serious bodily injury that Appellant argues that the evidence was insufficient to prove is the *mens rea* element.  Where, as here, the victim has suffered serious bodily injury, the *mens rea* required to support an aggravated assault serious bodily conviction can be satisfied either by proof that the defendant intentionally or knowingly caused the victim serious bodily injury or by proof that he acted with malice, defined as reckless infliction of serious bodily injury under circumstances manifesting extreme indifference to human life.  18 Pa.C.S. § 2702(a)(1) ("[a] person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life"); *Interest of N.A.D.*, 205 A.3d 1237, 1240 (Pa. Super. 2019); *Commonwealth v. Bruce*, 916 A.2d 657, 661, 664 (Pa. Super. 2007).

Viewed in the light most favorable to the Commonwealth, the evidence at trial was sufficient to permit the jury to find that Appellant acted with specific intent to cause serious bodily injury or with malice. The Commonwealth's evidence showed that Appellant stabbed Victim in the neck with a knife and with sufficient force to cut a hole in his trachea. N.T. Trial, 9/14/21, at 37-38, 52-57, 122-28. Use of a deadly weapon on a vital part of the body is sufficient to support the inference that the defendant intended to cause serious bodily injury or acted with malice. **Commonwealth v. Knox**, 219 A.3d 186, 195 (Pa. Super. 2019); **Commonwealth v. Nichols**, 692 A.2d 181, 184-85 (Pa. Super. 1997); **Commonwealth v. A. Miller**, 634 A.2d 614, 617-18 (Pa. Super. 1993) (*en banc*). A knife is a deadly weapon. **Commonwealth v. Magnum**, 654 A.2d 1146, 1150 (Pa. Super. 1995); **A. Miller**, 634 A.2d at 617-18. Although the stabbing occurred during a fist fight and Victim was on top of Appellant at the time that the stabbing occurred, the Commonwealth's evidence was sufficient to show that Appellant started the fight, that Appellant was angry at Victim before Victim interacted with him, and that Appellant used the knife in a more life-threatening manner than simply trying to get away from Victim. N.T. Trial, 9/14/21, at 45-55, 64-65, 88-89, 91-92, 122-28. Indeed, Appellant did not assert that he stabbed Victim in self-defense; rather, he testified that he did not stab Victim or anyone else. N.T. Trial, 9/15/21, at 143.

With respect to his aggravated assault bodily injury with a deadly weapon and possession of a weapon convictions, Appellant claims that there was no evidence that he had a weapon and that the evidence was insufficient to prove the *mens rea* required for these crimes. These arguments likewise ignore the Commonwealth's evidence at trial. The Crimes Code defines aggravated assault bodily injury with a deadly weapon as "attempt[ing] to cause or intentionally or knowingly caus[ing] bodily injury to another with a deadly weapon" and provides that a person commits the offense of possession of a weapon "if he possesses a … weapon concealed upon his person with intent to employ it criminally." 18 Pa.C.S. § 2702(a)(4); 18 Pa.C.S. § 907(b). The evidence was sufficient for the jury to find that Appellant had a deadly weapon, a knife, and used it to stab Victim. N.T. Trial, 9/14/21, at 52-57. Contrary to Appellant's assertions, Victim testified that he saw Appellant with a knife in his hand and saw Appellant raising the knife right before he was stabbed. *Id.* at 54-55. The jury could reasonably find that the knife was concealed on Appellant's person, as no witness saw a knife until Appellant raised it right before stabbing Victim. As discussed above, the evidence at trial was sufficient to prove that the knife was used with intent to cause serious bodily injury. It was therefore *a fortiori* sufficient to prove intent to cause bodily injury and intent to use the knife criminally.

Moving to Appellant's remaining issues, Appellant argues in his first issue that the trial court was required to dismiss the charges against him

because the Commonwealth's failure to produce the outdoor video footage of the incident recorded by the bar's surveillance system violated its obligation to disclose exculpatory evidence. Under **Brady v. Maryland** and its progeny, a defendant's right to due process is violated when the prosecution withholds material evidence that is favorable to him. **Brady**, 373 U.S. at 87; **Commonwealth v. Benvenisti-Zarom**, 229 A.3d 14, 26 (Pa. Super. 2020); **Commonwealth v. K. Miller**, 212 A.3d 1114, 1124 (Pa. Super. 2019). To establish a **Brady** violation, the defendant must prove each of the following three elements: (1) that the evidence at issue is favorable to him, either because it is exculpatory or because it impeaches; (2) that the evidence was suppressed by the Commonwealth, either willfully or inadvertently; and (3) that he was prejudiced. **Commonwealth v. Bagnall**, 235 A.3d 1075, 1086 (Pa. 2020); **Benvenisti-Zarom**, 229 A.3d at 26; **K. Miller**, 212 A.3d at 1124.

Appellant failed to satisfy the second of these requirements. The trial court found that the outdoor video was not downloaded when the police requested all of the surveillance video from the time of the incident. Trial Court Opinion and Order, 7/14/21, at 1-3. The evidence showed that the bar owner was the person in possession and control of all of the surveillance system's videos, that the bar owner downloaded the videos for the police, that the police promptly contacted the bar owner to obtain the outdoor video when they learned that it had not been downloaded, and that the bar owner failed to produce it. N.T. Trial, 9/14/21, at 31-33; N.T. Trial, 9/15/21, at 45-46, 75-

78. The bar owner was not a government employee over whom the Commonwealth had control. Indeed, the bar owner had ties to Appellant, who had worked for her, and she admitted that knew and liked Appellant. N.T. Trial, 9/15/21, at 73-75, 80-81. Because the Commonwealth never possessed the outdoor video, it could not be found to have suppressed this evidence, either willfully or inadvertently, and its failure to produce the outdoor video did not violate its obligations under *Brady*. *K. Miller*, 212 A.3d at 1126.

Moreover, even if Appellant had shown a *Brady* violation, the trial court's orders on this issue were proper. The trial court denied Appellant's motion to dismiss, but instructed the jury that it could draw an inference that the outdoor video would be unfavorable to the Commonwealth's case if it found that the Commonwealth did not satisfactorily show why it could not produce the outdoor video. N.T. Trial, 9/16/21, at 18-19. Dismissal of the charges against the defendant is a permissible remedy for failure of the Commonwealth to comply with its *Brady* obligations only where there is egregious prosecutorial misconduct. *Commonwealth v. Burke*, 781 A.2d 1136, 1144-46 (Pa. 2001). No egregious prosecutorial or police conduct was shown here. The trial court found that the unavailability of the outdoor video was caused by an inadvertent failure to download it, not by any intentional or bad faith conduct by the Commonwealth or by any person for whom it was responsible and not by any failure to preserve downloaded videos in the possession of the police. Trial Court Opinion and Order, 7/14/21, at 3.

Appellant does not cite to any evidence that would support a finding of any intentional suppression or destruction of the outdoor video or even a finding of negligent handling of the videos once they were in the possession of the police. Dismissal would therefore not have been a proper remedy in any event.

In his second issue, Appellant argues that the trial court erred in allowing testimony by the trauma surgeon that he contends constituted expert testimony. Testimony by a medical witness who treated the victim concerning her observations of the victim's injuries is not expert opinion and such testimony is admissible as lay witness testimony even though no expert report has been provided. *Commonwealth v. Yocolano*, 169 A.3d 47, 62-63 (Pa. Super. 2017). Testimony by such a witness as to the cause of the victim's injuries, however, is expert opinion that must be excluded if no expert report was provided. *Id.* at 63.

Here, the trauma surgeon testified concerning her observations of Victim's injuries and did not opine or testify in any way concerning the cause of the injuries or the force that would have been required to produce those injuries. N.T. Trial, 9/14/21, at 122-28. The only testimony by the trauma surgeon to which Appellant objected at trial was her testimony concerning the location of Victim's neck wound and how close it was to the carotid artery. *Id.* at 123-24. That is lay testimony concerning the witness's observations during treatment, not expert testimony. The trial court therefore did not abuse its

discretion in permitting the challenged testimony. *Yocolano*, 169 A.3d at 63. To the extent that Appellant is now asserting that other testimony by the trauma surgeon was inadmissible expert testimony, that issue is waived because Appellant made no objection to that other testimony at trial. *Benvenisti-Zarom*, 229 A.3d at 25-27; *Commonwealth v. Konias*, 136 A.3d 1014, 1021-22 (Pa. Super. 2016).

Appellant in his remaining issue argues that some of the Commonwealth's questions to Appellant on cross-examination concerning the of absence of corroborating witnesses for his version of events improperly shifted the burden of proof and that the Commonwealth allegedly mischaracterized the burden of proof in its closing. Both of these arguments are waived.

An objection to allegedly improper prosecutorial conduct without any request for a remedy is insufficient to preserve the issue for appellate review. *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa. Super. 2013). Appellant made no objection to the first questions that he now contends were improper. N.T. Trial, 9/15/21, at 132. Appellant did object to later cross-examination questions and the trial court in response stated that it would provide an instruction making clear that the burden of proof is always on the prosecution and directed the Commonwealth to move on. *Id.* at 149-51. Following this objection, the Commonwealth asked no further questions that Appellant contends shifted the burden of proof. *Id.* at 151, 164-65. Appellant

sought no further relief from the trial court beyond the jury instruction that it said that it would give and did not seek to strike the questions and answers or move for a mistrial. *Id.* at 151; N.T. Trial, 9/16/21, at 7. The trial court in its jury charge did instruct the jury that the burden of proof is always on the Commonwealth and that the defendant has no duty to present evidence. N.T. Trial, 9/16/21, at 11. Appellant did not object to the adequacy of this instruction or contend that any further instruction on this issue was needed. *Id.* at 27-28. Appellant's claim of error concerning the Commonwealth's cross-examination questions is therefore waived.

With respect to the Commonwealth's closing argument, Appellant does not state anywhere in his brief what the alleged improper statements were or cite to where any such statements appear in the trial transcript. This failure to set forth the statements that he challenges or cite to the portion of the record on which this claim is based waives any argument based on these alleged statements. *Commonwealth v. Gilbert*, 269 A.3d 601, 612 & n.7 (Pa. Super. 2022). In addition, Appellant made no objection to any statements in the Commonwealth's closing argument during or after its closing argument. N.T. Trial, 9/15/21, at 183-214. Appellant's claim for relief based on alleged statements in the closing argument is therefore also waived by his failure to timely object. *Commonwealth v. Williams*, 455 A.2d 632, 634 (Pa. 1983).

For the foregoing reasons, we conclude that none of the issues raised by Appellant in this appeal merits relief. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/2023