J-S07034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACK L. SHEDDEN, JR. | : | |
| | : | |
| Appellant | : | No. 964 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 26, 2023
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000483-2022

BEFORE:    LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED OCTOBER 17, 2024**

Appellant, Jack L. Shedden, Jr., appeals from the judgment of sentence imposed following his convictions of driving under the influence ("DUI")—general impairment, DUI—highest rate of alcohol, and careless driving.[1]  We affirm.

We glean the following facts from the record established at the suppression hearing.[2]  At approximately 9:28 p.m. on May 20, 2022, Appellant crashed his vehicle into a ditch and struck a mailbox in Canton Borough, Bradford County.  At the time of the crash, Appellant was returning from a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a)(1), 3802(c), and 3714(a).

[2] We rely on the suppression notes of testimony because Appellant has failed to ensure that the presence of the trial notes of testimony in the certified record.

VFW establishment with his fiancée, Melissa Wilcox. Appellant left Wilcox, who sustained minor injuries, at the scene and drove to his home, which was also in Canton. Two passersby stopped and attended to Wilcox and called 911. Trooper Alexander Gushka of the Pennsylvania State Police ("PSP") arrived at the scene, tended to Wilcox until an ambulance arrived, inquired as to the whereabouts of the driver who had caused the crash, and later drove to Appellant's residence, where he encountered Appellant outside the home. Appellant admitted to Trooper Gushka that he was intoxicated and failed a field sobriety test. Trooper Gushka placed Appellant under arrest and then transported him to Towanda Memorial Hospital, where Appellant consented to a blood draw. The blood draw, which was taken at 11:45 p.m., revealed that Appellant had a blood alcohol content ("BAC") of 0.173%.

Charges were filed, and Appellant filed a motion to suppress the BAC test results based upon the fact that his blood draw did not occur within two hours of the last time he had operated a vehicle. A hearing was held on this motion on February 3, 2023 at which Trooper Gushka testified. The Commonwealth also introduced a copy of the motor vehicle recording ("MVR") from Trooper Gushka's patrol vehicle, which captured the trooper's interactions with Appellant at his home through their arrival at the hospital. Commonwealth Ex. 1. On February 22, 203, the suppression court denied the motion.

Appellant was tried without a jury, and on May 1, 2023, the court found him guilty of the above-stated offenses.[3] On June 26, 2023, the court sentenced Appellant to serve three days to six months' imprisonment and to pay a $1,500 fine for DUI—highest rate of alcohol. No further penalty was imposed on DUI—general impairment based upon its merger with the aforementioned DUI charge, and Appellant was also directed to pay a fine of $25 for careless driving. This timely appeal followed.

Appellant raises the following issues:

[1.] The Court erred in denying the Appellant's Motion to Suppress his blood which was drawn over two hours from the time he was in actual control of his vehicle.

[2.] The Court erred in stating that the two-hour rule means that [] the Appellant did not imbibe any alcohol after he was arrested and before his blood was drawn.

Appellant's Brief at vi.

Appellant first argues the suppression court erred in denying his motion to suppress the BAC test results where the Commonwealth did not show good cause for exceeding two hours to complete Appellant's blood draw, which was required to meet the exception for admission of his BAC results under Section 3802(g) of the Vehicle Code, 75 Pa.C.S. § 3802(g). Appellant contends that Trooper Gushka caused the delay beyond two hours by (1) taking an excessive amount of time at the accident scene before leaving for Appellant's house; (2)

---

[3] Appellant was also initially charged with accidents involving damage to attended vehicle or property, 75 Pa.C.S. § 3743(a), but this offense was withdrawn prior to trial.

pulling over another vehicle on his way to Appellant's house, mistakenly believing that it was the individual who caused the crash; (3) not forgoing field sobriety tests and taking Appellant immediately for the blood draw after Appellant stated that he was unable to complete the tests due to physical limitations; (4) searching for Appellant's cell phone before leaving for the hospital; and (5) taking Appellant to Towanda Memorial Hospital when there were closer hospitals where the blood draw could have been completed.

When addressing a challenge to a suppression ruling, our scope of review is limited to the evidentiary record created at the suppression hearing. ***Commonwealth v. Benvenisti-Zarom***, 229 A.3d 14, 21 (Pa. Super. 2020).

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where[] the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Id.*** (citation omitted).

Unlike DUI—general impairment, the DUI—highest rate of alcohol offense of which Appellant was also convicted requires proof that the

defendant's BAC was "0.16% or higher *within two hours* after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(c) (emphasis added); ***see also Commonwealth v. Eichler***, 133 A.3d 775, 787 (Pa. Super. 2016) (noting that Section 3802(a)(1), which sets forth the DUI—general impairment offense "does not include 'two hour' language," and, as such, "evidence of blood tests taken more than two hours after driving is admissible under subsection (a)(1) without resort to [S]ection 3802(g)"). Section 3802(g) provides for an exception to the two-hour rule as follows:

> Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
>
>> (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
>>
>> (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. § 3802(g). Thus, "[i]n a section 3802(c) prosecution, when the blood test does not take place within two hours after the defendant drives, operates or is in actual physical control of the vehicle, test results are subject to suppression unless [the] Commonwealth proves good cause for the delay

in obtaining a blood test and the defendant did not imbibe alcohol between his arrest and his blood test." ***Eichler***, 133 A.3d at 786.

The record at the suppression hearing established that the accident was reported to law enforcement at 9:28 p.m., and Trooper Gushka was dispatched at 9:31 p.m. N.T., 2/3/23, at 8, 17, 35. Trooper Gushka arrived at the scene at 9:45 p.m., where he learned from Wilcox that Appellant was the driver of the vehicle. ***Id.*** at 9-10, 18, 36. Trooper Gushka left the scene after emergency medical personnel had arrived to attend to Wilcox. ***Id.*** at 19, 31-32, 42. After a brief stop of another vehicle en route that took no more than five minutes, Trooper Gushka arrived at Appellant's home at 10:50 p.m. and had Appellant complete one field sobriety test, the horizontal nystagmus test. ***Id.*** at 10, 12-13, 20-28, 36-37; Commonwealth Ex. 1. Trooper Gushka arrested Appellant at 11:11 p.m. and transported him to Towanda Memorial Hospital, arriving at 11:43 p.m. N.T., 2/3/23, at 13-14; Commonwealth Ex. 1; ***see also*** N.T., 2/3/23, at 42 (stating that it takes roughly 30 minutes to travel from Appellant's house in Canton to the hospital in Towanda). The blood draw was completed at 11:45 p.m. N.T., 2/3/23, at 14. Trooper Gushka agreed with Appellant's counsel's suggestion at the hearing that, Appellant would have been able to travel the short distance to his home from the scene of the accident in approximately three to five minutes, meaning he was home at approximately 9:30 to 9:35 p.m. ***Id.*** at 24, 35. Therefore, Appellant's blood draw was completed within two hours and fifteen minutes of the last

time Appellant had "driven, operated or been in actual physical control of the movement of" his vehicle. 75 Pa.C.S. § 3802(g); *see* Order, 2/22/23, at 1.

In denying Appellant's suppression motion, the suppression court ruled that the Commonwealth demonstrated good cause for not completing the blood draw within the two-hour window as follows:

> the Commonwealth showed "good cause" as to why the blood draw was not obtained within the two (2) hours of [Appellant] driving his vehicle. Specifically, the evidence established (i) that [Appellant] left the scene of the accident in his vehicle and drove home, (ii) that [Appellant] left his passenger on the side of the road needing medical attention, (iii) that the trooper, as a result of the situation at the scene of the accident, remained on the scene until emergency personnel arrived, (iv) that the trooper then drove to [Appellant's] home, (v) that the trooper determined it was appropriate to administer standard field sobriety tests on [Appellant], and (vi) that, after [Appellant] was placed under arrest, the drive to the approved hospital where the blood was drawn took about thirty (30) minutes.

Order, 2/22/23, at 1.

Upon our review of the record at the suppression hearing, including the MVR capturing the events after Trooper Gushka arrived at Appellant's home, we conclude that the suppression court's findings are supported by the record and its legal conclusions drawn from those findings are sound. The principal source of the delay in this case was Appellant's decision to flee from the scene of the accident and leave his injured fiancée behind. *See Eichler*, 133 A.3d at 786 ("Eichler's flight from the accident scene, and the consequential delay in finding him, constituted good cause for the failure to obtain his blood test within two hours after he stopped driving."). Once Trooper Gushka arrived at

the scene, Appellant began to render aid and assistance to Wilcox until emergency personal arrived pursuant to his community caretaking role as a law enforcement officer. *See Commonwealth v. Starry*, 224 A.3d 312, 320 (Pa. 2020) (noting that officers may have good cause for not completing chemical testing within two hours when they "face other pressing needs in various circumstances, including at accident scenes"); *Commonwealth v. Patterson*, 304 A.3d 1245, 1250 (Pa. Super. 2023) (discussing community caretaking doctrine, which "contemplates that the police officer's actions be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity"). At the same time as he was assisting at the accident scene, Trooper Gushka also investigated who was responsible for the crash and that individual's current whereabouts. The trooper's decision on the way to Appellant's house to pull over a vehicle with a similar description to the one involved in the crash was part of his efforts to locate the individual who had fled the scene.

Once Trooper Gushka arrived at Appellant's home, he did not unnecessarily prolong his investigation of Appellant to determine his inebriation and incapacity to operate a vehicle. Contrary to Appellant's assertion in his brief, Trooper Gushka was not at Appellant's home for 61 minutes, Appellant's Brief at 7, but rather approximately 21 minutes before arresting Appellant and transporting him for the blood draw. N.T., 2/3/23, at 10, 12-13, 26, 36; Commonwealth Ex. 1. During that time, the trooper established probable cause that Appellant had committed a DUI offense by

engaging him in conversation and then asking Appellant to perform one field sobriety test, the horizontal gaze nystagmus test, which did not require any movement from Appellant. N.T., 2/3/23, at 13, 27-28; Commonwealth Ex. 1. While the trooper spent a few minutes looking for Appellant's cell phone before departing to the hospital, this was only to assist Appellant in being able to arrange a ride home from the PSP barracks. N.T., 2/3/23, at 30; Commonwealth Ex. 1. Furthermore, Trooper Gushka's decision to proceed to Towanda Memorial Hospital was appropriate when it was PSP policy to complete blood draws in Towanda and he was not aware at the time that any closer hospital also performed blood draws. N.T., 2/3/23, at 31, 42. In sum, the record demonstrates that Appellant caused the substantial, initial delay by fleeing the accident scene and Trooper Gushka acted diligently in gathering evidence of Appellant's intoxication and transporting him for the blood draw, balancing the trooper's other responsibilities as a law enforcement officer responding to the scene of a motor vehicle crash.

Appellant's second issue concerns the suppression court's analysis with respect to Section 3802(g)(2), the second part of the standard that the Commonwealth must meet to admit chemical test results obtained outside the two-hour statutory window. The lower court found that, under subsection (g)(2), "the Commonwealth established that [Appellant] did not imbibe any alcohol after his arrest and before his blood was drawn." Order, 2/22/23, at 1. The court emphasized that the Commonwealth was only required under subsection (g)(2) to show that Appellant had not consumed any intoxicants

since the time of his arrest rather than since the time he ceased driving, citing our Supreme Court's decision in **Starry**. Order, 2/22/23, at 1 n.1.

Appellant contends that the suppression court "erred in stating that the two[-]hour rule means that Appellant did not imbibe any alcohol after he was arrested and before his blood was drawn." Appellant's Brief at 9 (emphasis omitted). He argues that "the **Starry** decision does not affect the two-hour rule under" Section 3802(g) "because [the] rule still begins after the Appellant is driving or found in actual physical control of the motor vehicle not after his arrest." **Id.** at 10.

Appellant misapprehends the separate showings required of the Commonwealth in Section 3802(g)(1) and (g)(2), with each element of this standard measured from a different starting point. Under subsection (g)(1), the Commonwealth must prove good cause as to why the chemical testing did not occur within two hours of *the last time the defendant drove the car*. Subsection (g)(2) by contrast is only concerned with whether alcohol or controlled substances were consumed from *the time of arrest* through the time of the chemical test. 75 Pa.C.S. § 3802(g)(2) ("[T]he Commonwealth [must] establish[] that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained."). Thus, the time frame at issue in subsection (g)(2) is shorter, only being concerned with the time from arrest to chemical testing rather than from the last point of driving to chemical testing. To the extent there was any ambiguity in the statute, the Court in **Starry** made it crystal

- 10 -

clear that subsection (g)(2) "concerns only the time period between *arrest and blood testing*." 224 A.3d at 315 (emphasis in original). The suppression court accurately applied the legal standard of subsection (g)(2), Order, 2/22/23, at 1 & n.1, and Appellant does not contest that the suppression record supports the court's finding that the Commonwealth showed that he did not consume alcohol after his arrest. Appellant's Brief at 6 ("Naturally after [Appellant] is arrested he cannot drink [because] he is handcuffed . . .").

Appellant also briefly argues that the lower court "misunderstood [his] defense" that he "did not imbibe alcohol after being in actual physical control of his vehicle," claiming that "the trial record is void as to any evidence as to if the Appellant was intoxicated a[t] the time he drove and was in actual physical control of the vehicle." Appellant's Brief at 5-6. However, Appellant did not preserve any allegation of trial court error in his concise statement of errors complained of on appeal, *see* Pa.R.A.P. 1925(b) Statement, 8/3/23; ***Commonwealth v. Proctor***, 156 A.3d 261, 267 (Pa. Super. 2017) (issues not raised in Pa.R.A.P. 1925(b) statement are deemed waived), and the trial transcript is absent from the certified record, precluding our review of this argument even if the claim were not waived. ***See Commonwealth v. Holston***, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*) (appellant has responsibility to ensure completeness of certified record).

Appellant is therefore not entitled to relief on either of his appellate issues, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

- 11 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/17/2024